Berlant Appeal.

Argued November 13, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY AND MANDERINO, JJ.

440

reargument refused December 13, 1974.

*John Rogers Carroll,* for appellant.

*William P. Stewart,* Special Counsel, for Special Judicial Investigation, appellee.

*Daniel D. Murphy,* with him *Eric B. Henson,* for Committee of Censors, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, October 16, 1974:

By order of the Disciplinary Court of the Court of Common Pleas for Philadelphia County, appellant was suspended from the practice of law for five years.[1] The basis for that order was the court's finding of his guilt with regard to fifteen instances of improper solicitation of cases, ten instances of filing false contingent fee agreements, five instances of making improper advances to clients, two instances of impeding the court's investigation, two instances of submitting

---

[1] On May 3, 1973, we granted appellant's Petition for Supersedeas, thereby staying that order pending final disposition of this appeal.

false medical bills, one instance of subornation of perjury, and failing to make timely filings of one hundred ten contingent fee agreements and twenty-one statements of distribution. This matter is before us upon direct appeal pursuant to the Act of May 19, 1879, P. L. 66, §1, 17 P.S. §1663.[2]

Our primary responsibility in this case is to review the record of the proceedings below. However, prior to that discussion, there are several preliminary questions which we must consider.

Initially, appellant contends that the proper standard of proof in disciplinary proceedings is the "reasonable doubt" standard. We disagree. Disciplinary proceedings are not criminal in nature; hence, the reasonable doubt standard need not apply. Moreover, the sanctions arising from such proceedings—censure, suspension, or disbarment—are not primarily designed for their punitive effects, but for their positive effect of protecting the public and the integrity of the courts from unfit lawyers. *See Moyerman's Case*, 312 Pa. 555, 563, 167 A. 579 (1933). While we recognize the severe impact that such sanctions may have on an individual's career, we are also mindful of our duty to uphold the quality and integrity of the Bar. Accordingly, we shall not require proof beyond a reasonable doubt, but shall retain the standard which this Court has consistently utilized in disciplinary cases through the years: "that a preponderance of evidence is necessary to establish an attorney's unprofessional conduct and the proof of such conduct must be *clear* and *satisfactory.*" *Krehel Appeal*, 419 Pa. 86, 89, 213 A.2d 375, 377 (1965).

---

[2] Although this section has been suspended by Rule 17-24 (a)(5) of this Court, Rule 17-25 provides that Rules 17-1 to 17-24 shall *not* apply to "any special judicial investigation in existence at the time of the adoption of these Rules, which, together with any disciplinary proceedings arising therefrom, shall be concluded under the procedure established for the conduct of such investigation."

We now address appellant's questions relating to the type of evidence necessary to sustain certain charges herein. Generally, appellant contends that the absence of direct evidence of his involvement in certain offenses charged preclude a finding of guilt in those matters. For instance, appellant refers to a number of cases in which an associate under his employ was the person who actually prepared some of the false contingent fee agreements for which the court below held appellant responsible. Appellant's attempt to shield his guilt in this manner is unavailing. The fact that an attorney may not have dirtied his hands with the manual task of filling in forms does not necessarily relieve him of culpability any more than would the use of "runners" to avoid direct involvement in solicitation. If under the circumstances it is reasonable to infer that the action was taken at the party's direction or with his approval, the fact finder may draw such inferences to support a finding of guilt. Appellant's position is very close to the untenable proposition that a charge of professional misconduct may not rest exclusively on circumstantial evidence. This Court has upheld even the sanction of disbarment on charges proven solely by circumstantial evidence. *See, e.g., Lemisch's Case,* 321 Pa. 110, 184 A. 72 (1936); *Salus's Case,* 321 Pa. 106, 184 A. 70 (1936). Thus, appellant cannot rely on this argument for overturning any of the findings of guilt below as a matter of law.

In a related argument, appellant asserts that the charge of solicitation by runners cannot be sustained where there is no direct evidence of his payment of compensation to such runners. Again, we disagree. While the court below inferred "that the solicitors did receive something of value for their time, efforts and expense on [appellant's] behalf," this inference was unnecessary to sustain a finding of guilt. The Code of Professional Responsibility condemns such conduct

without any requirement of compensation. DR 1-102 provides: "(A) A lawyer shall not: . . .(2) Circumvent a Disciplinary Rule through actions of another." This section, read in light of the proscription against self-recommendation in DR 2-103, not only condemns the hiring of solicitors by attorneys but also forbids any arrangement between an attorney and solicitor for solicitation purposes or even the acquiescence of the attorney who has knowledge of a solicitor's activities in his behalf. We do not mean to suggest that the casual recommendation of an attorney by a friend or acquaintance is improper. Rather we seek to eliminate the active recruitment of clients and stirring up of litigation by or on behalf of attorneys.

Moreover, the fact that some of the solicitation for which appellant was adjudged guilty occurred prior to the effective date of the present Code of Professional Responsibility is of no consequence. This Court has never required proof of compensation in these circumstances. *Klensin v. Board of Governance,* 312 Pa. 564, 168 A. 474 (1933), clearly indicates that proof that the accused paid "runners" is not essential to a finding of guilty of solicitation through runners. The Court there quoted with approval from the report of the hearing masters: " 'The first charge of unethical soliciation [sic] of business is amply sustained by the evidence. It is true that respondent did not employ 'runners' at a compensation. The work of solicitation was confined to his father, who may not have received any cash consideration for the work. . . .' " 312 Pa. at 571, 168 A. at 476-77. Thus, proof of compensation is not required for a finding of guilt with regard to any of the charges of indirect solicitation.

Appellant also contends that he is entitled to a new trial because counsel for the Special Judicial Investigation started to inquire about appellant's Fiftth Amendment assertion in an earlier hearing. Appellant con-

tends that this constituted reversible error under the doctrine of *Spevack v. Flein*, 385 U.S. 511, 87 S. Ct. 625 (1967). We find this argument meritless. Counsel for appellant objected at the outset of this line of questioning before appellant had responded and his objection was sustained at that time. There was no possibility of prejudice since the objection was promptly sustained before any evidence of appellant's prior Fifth Amendment plea could enter the record in this case.[3] Certainly, nothing in *Spevack*[4] would suggest grounds for reversal in the instant situation and accordingly, we dismiss this contention.[5]

We now turn to our major task—a review of the factual determinations of the court below. We are entrusted with this duty of de novo review by the Act of May 19, 1879, P. L. 66, §1, 17 P.S. §1663 which provides: "In all cases of any proceedings in any court of this commonwealth against any attorney of said court for unprofessional conduct as an officer of such court, said attorney shall be entitled to a writ of error from the supreme court of this commonwealth,

---

[3] Even counsel's question does not refer to a Fifth Amendment assertion. After appellant denied ever having given compensation to anyone for referring a case to him, counsel asked: "Do you recall being asked that same question before Judge Shoyer? Page 9." Objection was immediately taken at that time.

[4] *Spevack* held that the privilege against self-incrimination extends to disbarment proceedings and that an order of disbarment based on petitioner's assertion of that privilege must be reversed. Not even the broadest reading of this decision would suggest that reversal is required in the absence of prejudice. Moreover, the fact that the privilege against self-incrimination was never even invoked in this proceeding renders *Spevack* totally inapposite.

[5] Appellee also argues that this questioning would have been proper since it was being utilized to impeach appellant by showing a prior inconsistent statement. Since the objection was sustained below at the outset, we do not even reach this question.

as in civil cases, to said court, from any judgment, order or decree of said court, against him as such officer, which writ of error shall remove the record and all the proceedings therein to the supreme court of this commonwealth; and *it shall be the duty of said supreme court to review the same de novo;* and the complainant shall have the right to offer new testimony by deposition or otherwise as said supreme court may direct, and upon hearing said court may modify, reverse or affirm said judgment, order or decree of the court below, as the justice and equity of the case shall require, and such cases shall be placed if desired at the head of the list of the next sessions of said court in any district where it may sit, to be determined after all homicide cases have been disposed of; said writ of error shall be issued as of course within two years from the judgment, order or decree as aforesaid." (Emphasis added.)[6] Since our review is de novo, we are not bound by the findings of the court below, but are free to evaluate the evidence presented in the record as we see fit. *Krehel Appeal,* 419 Pa. 86, 89, 213 A.2d 375, 377 (1965). However, we do recognize the advantage which the trial court has in evaluating the credibility of witnesses before it. This factor has frequently made this Court reluctant to disturb the findings of the lower court where such findings were supported by competent evidence. *See, e.g., Smith Disbarment Case,* 376 Pa. 255, 101 A.2d 710 (1954); *Kraus's Case,* 322 Pa. 362, 185 A. 737 (1936). However, where the disciplinary court has imposed a sanction based on evidence which, although legally "sufficient" to sustain the charge, appears manifestly unreliable to us, we will not hesitate to overturn the determination below. *See Krehel Appeal,* 419 Pa. 86, 91, 213 A.2d 375, 377 (1965). Having established the

---

[6] *See* note 2 *supra.*

ground rules for our review, we now turn to the evidence in this case.

The charges confronting appellant stem from two separate petitions: (1) that of the Committee of Censors involving the alleged solicitation of two of appellant's personal injury cases as well as a related charge of subornation of perjury; and (2) that of the Special Judicial Investigation involving the remaining charges which arise from some fifteen of appellant's personal injury cases. As noted above, appellant was adjudged guilty of some thirty-five different charges, not including his failure to file some one hundred ten contingent fee agreements and twenty-one statements of distribution as required by Court Rule 202 of Philadelphia County. We have carefully reviewed the entire record of the proceedings below. Because of the large number of cases and charges involved in this proceeding, we shall not recount the evidence case by case or charge by charge. We shall, however, attempt to summarize the evidence as a whole while noting specifically the basis for any disagreements with the lower court's findings.

At the outset, it should be noted that appellant did *not* deny the charges of advancing money to clients in violation of DR 5-103(B) and the late filings in violation of Rule 202. His arguments in justification of these violations are unpersuasive and accordingly, we shall not disturb the lower court's determination on these points,[7] but shall move on to the more serious charges presented in this case.

---

[7] Appellant attempts to justify his advances on the basis of the client's indigency, since the money was generally used for rent, food, and other necessities. While this may be a mitigating factor when considering the sanction, it is irrelevant to the commission of the offense itself under DR 5-103(B).

Appellant attempts to justify his noncompliance with Rule 202 on the ground that the retainer agreements were being used to

On the whole, we are in agreement with the lower court's findings in this case. However, there are a few instances in which we cannot concur in the disciplinary court's findings of guilt. In these instances, our bases for disagreement either go beyond questions of credibility or relate to questions of credibility which are so manifest that one can make an intelligent decision thereon merely by referring to the record. We shall note these points of variance at this time.

With regard to the charges in the Committee of Censors' petition—that appellant solicited the cases of Clarice Palmer and Viola Woodland and that he suborned the perjury of Viola Woodland both at trial and in an affidavit—we cannot concur with the findings of guilt below. The charges of solicitation arise from events which occurred in 1963, some nine years prior to the hearing in this case. Likewise, the alleged perjury, to which the subornation charges refer, relates to these same events. The Committee's evidence rested heavily on the testimony of the two former clients. We find the testimony of these two witnesses to be confused, uncertain, and unworthy of belief. Although the witnesses' confusion is somewhat explainable by the lapse of time, this does not make their uncertain testimony any more reliable.[8] While we do not necessarily find appellant's evidence contrastingly more credible,

---

harass him. We do not find evidence of such "harassment" in the record, particularly in view of the merit of many of the more serious charges against appellant.

[8] Clarice (Palmer) Chambers repeatedly admitted a "blurred mind" with respect to the events of 1963. Viola Woodland had similar problems. In addition, both witnesses were caught in numerous inconsistencies, not only with respect to prior hearings and events but between their present testimony and that of a few minutes earlier. Upon reading all the testimony by these two witnesses, one must certainly come away with a general feeling of the witnesses' confusion and uncertainty.

we feel it would be inappropriate to base a sanction of suspension on such uncertain evidence.

Turning to the charges contained in the petition of the Special Judicial Investigation, our first point of disagreement with the court below is its finding of guilt as to the charge of submitting false medical bills in the case of Ernestine McCullough. The fact that the witness admitted lying to the defendant's doctor regarding the number of visits because she "figured if [she] told him that that [she] would probably get more money out of the accident" raises a strong possibility that she may also have lied to appellant for the same reason when he was preparing her claim. Therefore, we are unwilling to accept this charge as a basis for the sanction imposed.

With respect to the case of Pearl McNeil, we are not convinced of appellant's guilt as to the charge of solicitation. The client's testimony indicates that Mr. Batt, appellant's associate, visited Mrs. McNeil in her capacity as a possible witness in the case of her sister's estate. At the close of that conversation, Mrs. McNeil asked Mr. Batt to represent her since he was already representing her brother-in-law in his capacity as administrator of his wife's estate. We are not convinced that a finding of solicitation is merited on these facts.

Our doubts, however, do not extend to the related charge of filing a false retainer agreement listing Mrs. McNeil's brother-in-law, Lenwood Butler, as the referring party. Although there may not have been any devious motive for listing Mr. Butler as the referring party, there is no question that this information was inaccurate since Mrs. McNeil had not spoken to Butler about retaining any lawyer prior to Mr. Batt's visit. Thus, we affirm the filing false retainer agreement charge although the significance of this charge is reduced by our inability to find the accompanying solicitation in this case.

In the case of Evelyn Pearson, we are not persuaded by the evidence on the charge of submitting false medical bills. While the witness initially indicated that the number of visits to the physician on the submitted bill, fifty-five, was erroneous and that the actual number was closer to twelve, her testimony on this point was severely impeached on cross-examination. By the end of her testimony, she conceded not only that she couldn't remember the precise number of visits but also that she wasn't even sure whether the number could have been fifty-five. For this reason, we cannot sustain the finding of guilt on the false medical bill charge.

With regard to the remaining charges, however, we are in agreement with the findings of the disciplinary court. As noted above, we are not discussing each of these remaining charges in detail, but are merely attempting a general discussion of each class of charges.

As to the twelve remaining charges of solicitation through runners, the evidence viewed as a whole reveals a pattern of runners and wreck-chasers soliciting the personal injury claims of automobile accident victims for appellant.[9] Appellant denies any involvement or arrangement with these solicitors. Nevertheless, several facts clearly support the inference that either a solicitation arrangement existed or, at the very least, that appellant knew of the solicitation when he accepted the cases: (1) the solicitor provided the victim with automobile transportation to appellant's center

[9] James Ghilyard, an admitted solicitor of business for auto body shops, was identified by several accident victims and former clients of appellant as the person who solicited their respective cases, either at the scene of the accident or at the victim's home within a few days of the accident. Wilbur Allen was identified as a solicitor by several other victims. In the other cases, the parties making the initial solicitation included anonymous callers, unidentified runners, and in one instance, Ghilyard's wife.

city office and then to the victim's home after a retainer was signed; (2) in several cases, appellant was personally introduced to the prospective client by the solicitor; and (3) in at least ten cases retainer agreements with false referral information were filed, presumably in an attempt to cover up the solicitation (see our discussion *infra*). While proof that the runners were paid for their activity is unnecessary, we would concur in the disciplinary court's inference thereof even if such proof were required. Accordingly, we affirm the disciplinary court's findings of guilt with respect to these remaining twelve charges of solicitation.

We now turn to the ten charges of filing false contingent fee agreements. Philadelphia Common Pleas Court Rule 202(f), which requires every attorney entering into a contingent fee agreement to file a copy thereof with the Prothonotary, also requires a signed statement by the client listing the name and address of the person who recommended the attorney. In each of these cases, the client testified that the referral information was false. In several cases, the referral statements were in appellant's own handwriting. In other cases, they were filled out by appellant's associate. With respect to these latter instances, appellant strenuously objects to any finding of culpability, arguing that he had no knowledge of these actions. Nevertheless, as noted above, the drawing of reasonable inferences in disciplinary cases is quite appropriate and we agree with the disciplinary court's inference of knowledge on appellant's part with regard to these charges. We are particularly persuaded in this regard by the following argument found in the brief of the Special Judicial Investigation: "This was Berlant's office, it was his practice, the profits were all his, all the retainers were in his name, he participated in all phases of the cases involved, and was exclusively

responsible for some phases. Berlant had no partner who could have been responsible for the day-to-day operations in his office and who could have acted without his knowledge." Thus, we concur in the findings of guilt on these ten charges.

The only charges left to be considered are the two counts of impeding the court's investigation in violation of DR 1-102(4) and (5).[10] In both instances, the evidence is credible and sufficient to support the determination of guilt below. In one instance appellant attempted to solicit perjury from one of his prior clients. In the other, appellant told a party, subpoenaed to appear at the office of the Special Counsel, that he need not appear. Such conduct, in our opinion, warrants the decision of the disciplinary court on these charges.

In summation, the findings of guilt are sustained as to the following charges: twelve counts of solicitation; ten counts of filing false contingent fee agreements; two counts of impeding the court's investigation; five counts of making improper advances to clients; and failure to comply with Philadelphia County Court of Common Pleas Rule 202 with respect to some one hundred ten contingent fee agreements and some twenty-one statements of distribution. On the basis of these charges, notwithstanding our disagreement with several of the Disciplinary Court's findings, we cannot say that the sanction imposed below is unduly harsh. Through these numerous violations of the Code of Professional Responsibility's Disciplinary Rules, appellant has dishonored the legal profession. Nevertheless, the court below, mindful of appellant's

---

[10] DR 1-102(4) prohibits a lawyer's engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. DR-102(5) prohibits conduct which is prejudicial to the administration of justice.

previously untainted twenty-one years of practice and numerous character witnesses, chose to impose the sanction of five years' suspension. We can find no reason for reducing the severity of the sanction.

Accordingly, the order of the Disciplinary Court, suspending appellant from the practice of law for a period of five years, is hereby affirmed. Appellant to pay costs.

Mr. Justice NIX took no part in the decision of this case.

———

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I concur in the majority's finding of guilt on the charges of attempting to solicit perjury and of improperly advancing living expense money to clients. My concurrence on the latter charge is based *solely* on the evidence indicating that the purpose of one "loan" was not simply to enable an indigent client to withstand the rigors of a possibly protracted litigation, but was designed to (and did) influence the client— who had already retained other counsel—to dismiss his attorney and retain appellant. I concur in the court's finding that appellant failed to comply with Philadelphia Court Rule 202, regarding the filing of contingent fee agreements, but I do so for reasons not discussed in the majority opinion. These reasons will be explained later in this opinion.

I dissent from the finding of guilt for making advances to clients in those cases where the advances were made after the persons had become appellant's clients. I dissent from the finding of guilt on the charges of filing false contingent fee agreements because the evidence is insufficient to sustain the charge.

I also dissent from the court's finding of guilt for "solicitation." *NAACP v. Button,* 371 U.S. 415, 9

L.Ed.2d 405, 83 S. Ct. 328 (1963), held that the National Association for the Advancement of Colored People, its members, *and lawyers* had a right to associate for the purpose of assisting persons who seek legal redress for infringement of their rights. The State could not under its power to regulate the legal profession prohibit such associations simply by labeling it as improper "solicitation." The court emphasized that "solicitation" is within the area of freedoms protected by the First Amendment: "We meet at the outset the contention that 'solicitation' is wholly outside the area of freedoms protected by the First Amendment. To this contention there are two answers. The first is that a state cannot foreclose the exercise of constitutional rights by mere labels. The second is that abstract discussion is not the only species of communication which the Constitution protects; the First Amendment also protects vigorous advocacy, certainly of lawful ends, against governmental intrusion." *Id.* at 429, 9 L.Ed.2d at 415-16.

Although *NAACP v. Button, supra; United Mine Workers of America v. Illinois State Bar Association et al.,* 389 U.S. 217, 19 L.Ed.2d 426, 88 S. Ct. 353 (1967); *Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar,* 377 U.S. 1, 12 L.Ed.2d 89, 84 S. Ct. 1113 (1964); *United Transportation Union v. State Bar of Michigan,* 401 U.S. 576, 28 L.Ed.2d 33, 91 S. Ct. 1076 (1971), have addressed themselves to the issue of collective activity designed to apprise potential clients of their legal rights there is no reason to believe that the scope of the First Amendment protections depends on whether the individual being solicited is in the company of his friends and associates.

The record in this case does not indicate that appellant ever paid money in exchange for recommendations by those who allegedly acted as "runners" for him. Such activity would involve a fraud on the con-

sumer who accepted that kind of a "solicitation." The state undoubtedly has a substantial interest in protecting the public from fraud and other abuses likely to result if lawyers are given unrestrained freedom to solicit. However, the state's infringement on First Amendment association rights must be narrowly drawn. Any restriction of First Amendment rights must be limited to the minimum extent needed to prevent the abuses at which the regulation is directed. The fatal defect of the disciplinary code's advertising and solicitation rules is that it indiscriminately prohibits all advertising and solicitation by members of the bar. The prevention of the abuses of a few, who might be unscrupulous in their use of such rights, cannot justify a blanket prohibition.

I believe that Philadelphia Court Rule 202, as now worded, violates the equal protection clause of the Fourteenth Amendment. Rule 202(f) requires that contingent fee agreements in death and personal injury actions, workmen's compensation claims, or land condemnation proceedings be filed with the Prothonotary. By failing to require filing of *all* contingent fee agreements between an attorney and client, the rule offends the constitution.

Contingent fee agreements have long been the subject of concern to the courts. They have been subjected to careful scrutiny to see that no unfair advantage is taken of the clients' position or lack of knowledge. *Chester County v. Barber*, 97 Pa. 455 (1881). The object of such court scrutiny is to prevent injury to the client, to proscribe a relationship subject to abuse by the attorney. The cases considering the validity of contingent fee agreements make no distinction as to the subject matter of the litigation taken pursuant to the agreement. Likewise, Rule 202 of the Pennsylvania Rules of Civil Procedure, in requiring contingent fee agreements to be in writing, applies to

*all* contingent fee agreements regardless of the kind of claim or case.

The potential for abuse is present in *all* contingent fee agreements between a lawyer and client. It is not peculiar to personal injury, workmen's compensation, or land condemnation suits. Rule 202(f) unreasonably discriminates between the named cases and other contingent fee agreements, and, as such, is unconstitutional. I believe, however, that the offensive provision is severable and can be stricken from the Rule. The Rule would then require that *all* contingent fee agreements be filed. I therefore concur that appellant's failure to comply with the rule warranted the court's finding of guilt for such failure to comply.

I would remand for reconsideration of the discipline.