**In re Anonymous No. 19. D.B. 78**

Disciplinary Board Docket no. 19 D.B. 78.

HARRINGTON, *Board Member*, November 16, 1978—Pursuant to Rule 208(d)(iii) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

At the above number, a petition for discipline was filed by the office of disciplinary counsel naming [respondent] as respondent therein. In due course, the matter was assigned to hearing committee [  ] comprised of [  ], Esq., [  ], Esq., members, and [A], chairman. The matter came before the hearing committee on June 21, 1978, at the office of the disciplinary board at [  ] Street, [  ], Pa. Petitioner was represented by [  ]. Respondent was present at all times during the hearing and testified in his own

behalf. He was not represented by counsel. Stipulations were entered into, exhibits were offered and admitted but other than respondent, himself, no other witnesses were called. After testimony was closed, the hearing committee reported its conclusion that respondent had violated the following disciplinary rules:

D.R. 1-102(A)(5) in that he engaged in conduct which was prejudical to the administration of justice.

D.R. 6-101(A)(3) in that he neglected legal matters entrusted to him.

D.R. 7-101(A)(3) in that he prejudiced his clients during the course of a professional relationship.

The hearing committee's recommendations were " . . . that the Respondent, [ ], be found guilty of misconduct; and as a result thereof, be subject to formal admonishment by the Supreme Court of Pennsylvania."

No objections were filed to the report and no briefs on exceptions were filed by either party.

This board adopts the findings of fact and conclusions of law of the hearing committee but must respectfully decline to accept the recommendation of public admonishment (public censure) and instead recommends to this honorable court that [respondent] be suspended from the practice of law for a period of four months.

## II. FINDINGS

The pertinent facts are contained in a "stipulation" filed of record and received by the hearing committee as petitioner's exhibit 1. The pertinent facts contained in the stipulation are set forth below:

1. That respondent, [ ], is an attorney who is admitted to the bar of the Supreme Court of Pennsylvania with his office located at [ ] Street, [ ], [ ] County, Pa.

2. That on October 24, 1964, [B] died testate in [ ] County; respondent was named executor and trustee of her estate. After allowance for debts, deductions, specific bequests and distribution of $15 in coins, the balance for distribution was approximately $18,214.78 as of February, 1975.

3. Under the provisions of decedent's will, this sum was to be divided equally among the great grandchildren of [B] with each of the 14 of them to receive approximately $1,301.06. The will further provided that if a great grandchild had not reached the age of 21 years, his or her share "shall be set apart in a bank savings account in the name of such great grandchild, to be paid to such great grandchild upon reaching the age of 21 years." At the time of decedent's death on October 23, 1964, none of her 14 great grandchildren had attained the age of 21 years.

4. From 1965 until 1970, respondent took little action to administer the estate of [B]. On or about February 24, 1970, respondent filed a partial account of the estate; included therein was his five percent fee totalling $933.19.

5. On January 4, 1973, and March 14, 1974, the two oldest great grandchildren of [B] became 21 years old, respectively. However, respondent failed to timely distribute their respective portions of the estate to them as required under the terms of the will.

6. On November 21, 1974, [C], a grandchild of [B] and father of a number of her great grandchildren, filed a complaint with the office of disciplinary

counsel (complaint file no. [ ]) wherein he detailed the neglect by respondent in administering the estate of [B].

7. After investigation and review by disciplinary counsel and a reviewing member of the hearing committee, on October 22, 1975, respondent was informally admonished by disciplinary counsel for neglecting the administration of the [B] estate in violation of D.R. 6-102(A)(3) as partially detailed in the above paragraphs.

8. At or about the time the informal admonition was given to respondent, he had distributed approximately $3,900 to the three great grandchildren who had previously attained the age of 21 years.

9. Respondent thus retained approximately $14,311 of estate funds which, according to the terms of the will, were to be deposited into separate savings accounts in the names of the 11 remaining great grandchildren. In addition, in the schedule of distribution notarized on February 28, 1975, respondent had proposed to establish separate savings accounts on behalf of those great grandchildren who had not yet attained the age of 21 years and to deposit the proportionate share of each great grandchild into his or her separate account.

10. Despite frequent requests by [C] and his counsel, [ ], Esq., respondent has failed to carry out the terms of the will and the schedule of distribution by not establishing separate savings accounts in the names of the remaining great grandchildren and has maintained the remaining estate funds in non-interest-bearing accounts.

11. On January 31, 1978, respondent made a distribution in the amount of $1,559.83 to [D], a great grandchild of [B] who had attained the age of 21

years on January 25, 1978. According to respondent's calculations, the above amount was comprised of $1,312.91 principal and total interest of $246.92. The amount of interest was computed on the assumption that respondent had deposited $1,312.91 in a certificate of deposit on or about June 1, 1975.

12. On February 1, 1978, respondent deposited $1,500 of his personal funds into account no. [   ] in the name of the [B] estate at the [   ] National Bank, [   ], Pa., to cover part of the interest income which would have been earned had respondent established separate savings accounts for the great grandchildren under the provisions of the will.

[B] executed her will March 24, 1964. The will appears to have been prepared by respondent and witnessed by him. On October 24th of the same year [B] died and respondent should have assumed his responsibilities. More than 13 years later (at the time of the hearing) some matters relating to the estate had still not been concluded. The stipulation clearly presents facts from which only one conclusion can fairly be reached. Respondent has been neglectful in handling the [B] estate. When he appeared before the hearing committee, respondent was invited to offer testimony that might explain or excuse his neglect. The following exchange took place between chairman [A] and respondent beginning at N.T. 14:

"CHAIRMAN [A]

"Q. Do you think that the way you handled this particular estate after you received the informal admonition from . . . (Stipulation paragraph 7) . . . that it reflected adversely on how you practice law?

"A. The way I have handled this since then?

"Q. Yes.

"A. No, I don't.

"Q. Do you think there was no inordinate delay here?

"A. No, I don't. If I had just forgotten about it I would agree with you; but I had never forgotten about it. I have always had it on my mind.

"Q. It was always on your mind, but what did you do during '75, '76 and '77?

"A. I must have picked up this file ten times to try to calculate it. Finally, I gave it up. Then I went to the mathematician and had him do it." (N.T.14)

•  •  •

"N.T. 27, 28

"CHAIRMAN [A]

"Q. Can you possibly explain to this Board, why, if you received an informal admonition in 1975 regarding your administration, it took until last Friday to finally complete. And that's after you had notification of this Board's hearing. Why did it take almost, well, three years?

"A. I have explained the time since last Summer. I mean, I have gone through that.

"Q. Yes; but last Summer was 1977.

"A. I mean two years before that. It was just . . . I'd pick it up, work on it, wouldn't get it finished, put it back. I felt that—you know, none of the money, at that time, was due, so I was just losing money everyday. I was buying time is what I was doing." (N.T. 27, 28)

Respondent concluded by summarizing his position on page 42 of the notes of testimony as follows:

"I don't think I have intentionally failed to seek the lawful objectives through reasonable available

means. I really think that I made an effort to keep the thing moving as best I could.

"I don't think this reflects on my conduct, my fitness to practice law adversely.

"Neglect is a harder one for me to argue. I would let that up to the Board." (N.T. p. 42)

The record does not disclose any satisfactory explanation of respondent's failure to discharge his responsibility to his client.

After a substantial delay following testatrix' death, respondent testified that he did attempt to dispose of her property in accordance with the terms of the will but repeatedly found himself stymied in those efforts because of his inability to overcome what would seem to be minor difficulties, such as obtaining social security numbers of beneficiaries and working out a satisfactory way to compute interest. In short, respondent simply did nothing.

In light of the stipulation previously referred to and one which will be referred to hereinafter, the fact that there was a violation of the rules of disciplinary enforcement appears to be well established. The board then must determine what appropriate discipline should be recommended to this honorable court. Any such discipline recommended must have the positive effect of protecting the public and the integrity of the court from unfit lawyers: Berlant Appeal, 458 Pa. 439, 328 A. 2d 471 (1974), cert. denied 95 S. Ct. 1953 (1975).

Certain factors need to be and have been taken into consideration including the fact that respondent does have a history of prior delinquency which in one matter or another has extended over a long period of time. From that history and from the ex-

planation or lack thereof given by respondent at the hearing, it is the opinion of the board that only severe discipline is appropriate under the circumstances. The matter presently being considered by the board and previously considered by the hearing committee involves but one matter even though there are several allegations of violations of the rules. Such circumstances have not in the past judgment of the board justified recommendation of severe public discipline. Nor is the board unmindful of the careful consideration obviously given the matter by the hearing committee.

The record does disclose that at the time of the hearing committee proceedings, all of the estate and trust funds had been disposed of in accordance with the wishes of the testatrix. There is no evidence and no reason to believe that respondent appropriated the funds to his own use. To the contrary, at the time of the hearing committee proceedings, it appears that all of the funds had been disposed of in accordance with the testatrix' wishes. At all times the funds were available for disposition in a proper fashion and had been maintained in appropriate bank accounts.

On November 15, 1977, Chief Justice Eagen delivered a public censure to respondent from the bench. In part he said, ". . . but I want to warn you, and I hope you will understand, I want to make this as clear as I can. If you ever neglect another matter as an attorney for any client in this Commonwealth, the sanction that will be imposed will be very stringent." Those words were spoken just three months after respondent had received a letter from disciplinary counsel advising respondent that an investigation had been made in the [B] matter and further advising him that certain allegations of

misconduct were being considered by disciplinary counsel. Respondent failed to heed the warning of the Chief Justice and failed to attend to his duties in the [B] estate.

Considering the several prior disciplinary proceedings in which respondent has been involved and further considering the stern admonition of the Chief Justice, the disciplinary board has no alternative, and seeks none, than to recommend that respondent be suspended from the practice of law for a period of four months and that no application for reinstatement may be filed until the end of the four-month period.

## RECOMMENDATION

The board respectfully recommends that respondent be suspended from the practice of law for a period of four months and that no application for reinstatement may be filed until the end of the four-month period.

Messrs. Reath and Schiavo were not present and did not participate in the adjudication of this matter.

## ORDER

EAGEN, *C.J.*, And now, December 1, 1978, the recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania dated November 16, 1978, is accepted; and it is ordered, that the said [respondent] be, and he is herewith suspended from the practice of law for a period of four months from the bar of this court and in all the courts under its supervisory jurisdiction. It is further ordered that no application for reinstatement may be filed until the end of the four-month period.