**In re Anonymous No. 9 D.B. 82**

Disciplinary Board Docket no. 9 D.B. 82.

To the Disciplinary Board of The Supreme Court of Pennsylvania:

## REPORT OF HEARING COMMITTEE [   ]

Pursuant to Rule §89.171 of the Pennsylvania Rules of the Disciplinary Board of the Supreme Court of Pennsylvania, hearing committee [   ] herewith submits its findings and recommendations to your board with respect to the above proceeding.

## SUMMARY

The summary of the Petition for discipline is that respondent, [   ], failed to represent his client adequately in avoiding the mortgage foreclosure sale of her home and in the course of such failure of representation violated various disciplinary rules.

Respondent was, at the time in question, an employee of [   ] County Legal Aid Society. The complainant, [A] came to the Legal Aid Society, and in particular to respondent, for assistance following her receipt of a complaint in foreclosure. [A] later indicated that a benefactor could provide money to cure her mortgage default. [Respondent] conferred with the benefactor's attorney in New Jersey, who indicated a desire to settle the stated cure amount of $2,840 for $2,000. The mortgagees refused to accept that amount and subsequently the property was sold at Sheriff's Sale.

The issues involved center on whether [Respon-

dent] adequately represented the interests of his client in attempting to arrange the lending of money to her and whether or not [Respondent] made any misrepresentations or stated any falsehood to his client or other persons. The hearing committee made a finding of fact that [Respondent] did not neglect the interest of his client and that he did not make any misstatements.

## STATEMENT OF THE CASE

Respondent is alleged to have failed to arrange a lending of money to his client in order to cure her mortgage default. This alleged failure is the subject of the Office of Disciplinary Counsel allegations of violations of:

1. D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him;

2. D.R. 7-101(A)(1): A lawyer shall not intentionally fail to seek the lawful objectives of a client through reasonably available means;

3. D.R. 7-101(A)(2): A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services: and

4. D.R. 7-101(A)(3): A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship.

In addition, it was the position of the Office of Disciplinary Counsel that respondent had falsely told his client and the benefactor's lawyer that the sheriff's sale had been continued when in fact it had not been. These allegations gave rise to allegations of violations of:

1. D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

2. D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice.

3. D.R. 1-102(A)(6): A lawyer shall not engage in conduct that adversely reflects on one's fitness to practice law.

A hearing was held on these allegations before the hearing committee on April 22, 1982.

## RULINGS ON EVIDENCE AND OTHER PROCEDURAL MATTERS

There were no significant rulings on the admission of evidence or other procedural matters which merit discussion.

## FINDINGS OF FACTS

The hearing committee makes the following findings of facts:

1. On or about February 22, 1980, a complaint in mortgage foreclosure was filed on behalf of the Commonwealth of Pennsylvania School Employees Retirement Fund and Colonial Mortgage Service Company (mortgagees) against [A] as a result of [A's] default on a mortgage held by mortgagees on property owned by [A] which was located at [ ].

2. Service of the aforementioned complaint was effected upon [A] on March 3, 1980 and pursuant thereto [A] consulted respondent who was a member of the staff of the [ ] Legal Aid Society.

3. As a result of this consultation, respondent entered his apearance on behalf of [A] on or about March 28, 1980.

4. Upon the advice of her attorney, respondent, [A] sought to have the Department of Housing and Urban Development to accept assignment of the

aforementioned mortgage and during the pendency of HUD's consideration of this request the mortgagees directed that [C], Esq. hold the foreclosure proceedings in abeyance.

5. By letter dated August 28, 1980, HUD advised [A] and the mortgagees that it would not accept the assignment of the aforementioned mortgage.

6. By a letter dated September 12, 1980, the mortgagees directed [C] to proceed with the mortgage foreclosure.

7. On or about September 25, 1980, [C] filed a praecipe for judgment and assessment of damages, and judgment was entered on that date on behalf of mortgagees against [A] and damages were assessed in the sum of $5,271.06.

8. In or about October, 1980, [A] advised [Respondent] that she had located a benefactor, [D], and that [D] would provide funds to cure her mortgage default. She requested respondent, [    ], to communicate with [D's] attorney who practices in New Jersey.

9. In or about the end of October, 1980, or in the beginning of November, 1980, respondent did speak with [D's attorney], and [D's attorney] indicated that the benefactor's providing of funds would be conditioned upon securing an interest in the property in favor of his client. He requested respondent to obtain a search of the property and to obtain a cure figure.

10. On November 10, respondent communicated to [D's attorney] that the cure figure was in the amount of $2,840.

11. [D's attorney] advised respondent that $2,000 was the limit available and requested respondent to propose that figure to [C], who represented the mortgagees, and to also request a continuance of the sale.

12. Respondent did make such communications

to [C], who rejected the offer of $2,000 and refused to grant a continuance of the scheduled sheriff's sale.

13.  On or about November 12, 1980, respondent caused a telephone call to be made to [D's attorney]. Inasmuch as [D's attorney] was out of the office, a message was left that the company demanded full payment and that the sheriff's sale scheduled for November 14, 1980 was not postponed. However, an error in transcription indicated to [D's attorney] that the sheriff's sale had been postponed.

14.  Respondent on November 13, 1980, advised [A] that the sheriff's sale would proceed as scheduled and that he had been unsuccessful in obtaining adequate funds from her benefactor.

15.  Respondent had obtained a search of [A's] property but had not communicated it to [D's attorney] inasmuch as D's attorney's] client had never indicated that the necessary funds were available.

## DISCUSSION

The findings of facts by the hearing committee are based in substantial part on the committee members' evaluation of the demeanor of the testifying witnesses. Some findings of the committee required particular discussion.

Finding of fact no. 11, that [D's attorney] indicated to respondent that only $2,000 was available is based on the testimony of both [D's attorney] and [Respondent].

[D's attorney]: I had a client who was interested in assisting. I didn't indicate he would provide sufficient funds to cure the default. There was no mention concerning the money, the amount of money. I just said he had funds and was interested in helping.

[D's attorney]: At that time (November 10) I told

[Respondent] to make an offer to the mortgage company to see if they'd cure it for $2,000. I did not say there was only $2,000 available.

[D's attorney]: My client had authorized $2,000 without the judgment search being back yet, yes.

[E] ([Respondent's] attorney): In your November 10 conversation, four days before the sale, did you specifically tell [Respondent] that if the two-thousand-dollar figure was not accepted by the mortgage company lawyer, that more money was available?

[D's attorney]: No.

Question: You did not instruct [Respondent] that if the $2,000 didn't do it, that he should just go ahead and pay the full cure figure and avoid the sale?

[D's attorney]: I did not.

[Respondent]: Yes, I asked him if he had any more, I need more, the chances of getting it negotiated lower are minuscule, negligible, do you have any more. He said no. I said, I don't think it's going to work; and I recall this exactly, he said to me—He said no. When I said I don't think it's going to work, he said to me,—and this is practically a quotation; it sticks in my mind because it was said in a patronizing way—it won't hurt to try now, will it?

[Respondent] went on to testify that he did contact the attorney for the mortgagees and the $2,000 was refused. The request for the continuance was also refused.

It is clear that there was a definite discussion between [D's attorney] and [Respondent] of an amount of $2,000. This discussion was at a time when the cure figure was known by both attorneys to be $2,840. In fact, to cure the default with $2,000 would be of no benefit either to [Respondent] per-

sonally or to his client. There was, of course, a benefit to [D] in limiting the amount of $2,000. And, despite [D's] willingness to provide all funds necessary in sufficient amount to cure the default, apparently [D's attorney] did not understand this to be the case.

[D's attorney]: Yes, my testimony is, my client authorized me to suggest to [Respondent] that he request the mortgage company take $2,000 in satisfaction or in cure of their mortgage.

However, the testimony of [D], the benefactor, was that he had never limited the amount of money that would be provided by him to [A].

Inasmuch as [Respondent] had a good faith belief that only $2,000 was available for his client, his failure to pursue additional funds does not support a finding of neglect or other ethical failures.

The neglect referred to in Disciplinary Rule 6-101(A)(3)[1] "is not an instance of ordinary neglect per se such as inadvertent neglect without more even if such neglect should result in some loss or inconvenience to a client."[2]

An extensive analysis of the meaning of the word "neglect" as contained in D.R. 6-101(A)(3) is provided in the case of In re: Anonymous v. No. 24 D.B. 80, (20 D. & C. 3d). An examination of other cases is referred to at 20 D. & C. 3d 222.

To be violative of D.R. 6-101(A)(3) neglect must fall within one of the following three categories:

(1) Several instances of neglect which happen during the same general period of time, which evidence a pattern of neglect and which result in loss

---

1. Disciplinary Rule 6-101(A)(3)—A lawyer shall not neglect a legal matter entrusted to him.

2. In re: Anonymous v. No. 24 D.B. 80, (20 D. & C. 3d) 214 (1981)

to the client, (2) An instance of neglect and resultant loss to the client which was allowed to occur by a lawyer who had been repeatedly reminded or warned by the client or the client's agent against the same and before the same occurred or who had been reminded or warned against the same by authorities such as Disciplinary Counsel and before the same occurred; or (3) An instance of neglect resulting in a loss to the client and built upon a prior history or record of neglect resulting in a prior loss to a client and involving the same lawyer. Client loss is an important factor in all of the above three categories because until such loss occurs, the client has sufficient remedy in removing the case or matter from the lawyer involved and taking it to another lawyer.[3] 20 D. & C. 3d at 221.

Clearly the neglect in this matter, if any, does not rise to the level of an ethical violation contemplated in D.R. 6-101(A)(3).[4] The hearing committee gave no consideration to the question of civil liability.

With regard to finding of fact 13, that respondent caused a message to be left that the sale had been continued, the hearing committee made its finding of fact based on the testimony of the various witnesses. [E], [D's attorney's] secretary, testified about a phone message on November 12, 1980, which slip indicated that it had been prepared by her. [E] had no recollection of the phone conversation. The most that [E] could testify to was what she usually does when she takes phone messages.

While testimony of habit or custom is probative, and therefore admissible, cf. Baldridge vs. Mat-

_____

3. In re: Anonymous v. No. 24 D.B. 80, (20 D. & C. 3d) 221 (1981)

4. D.R. 6-101(A)(3)—A lawyer shall not neglect a legal matter entrusted to him.

thews, 378 Pa. 566, 106 A. 2d 809 (1954), it is by no means conclusive that the habit was followed at the time in question. In fact, [E's] testimony of her habit of telephone answering was related to current habits, not her habit at the time of the call in question. Finally, it is common knowledge that despite the best habits or practice of those taking telephone messages, it is not unusual for a written message to reflect inaccurately the message given.

In fact, both [Respondent] and [F], [Respondent's] secretary at the time, testified that [F] made the phone call to [D's attorney's] office at [Respondent's] direction.

[F] testified that she delivered the message as follows: "The message for [D's attorney] was that the sale had not been stayed, the Sheriff's Sale was still on, and the amount of the cure figure necessary to cure the default of the mortgage."

All three members of the hearing committee noted that [F] spoke in a very low voice and was difficult to understand. Therefore, it was the conclusion of the hearing committee that in fact the message was that the sale had not been continued. There was certainly no advantage in [Respondent] indicating that the sale had been continued if in fact the sale was going to take place. [Respondent] was certainly experienced enough to know that the sale could not be reversed once it had taken place, and the fact of the sale could not be hidden from his client.

With regard to finding of fact 14, the testimony of [A], the complainant, was the only direct testimony which was totally irreconcilable with the testimony of [Respondent]. [A] testified that on November 13, [Respondent] informed her that the mortgage foreclosure sale had been continued. Although [A] gave the impression of a very distinct memory of the

conversation, an examination of her testimony as a whole, her direct, cross-examination, and her response to questions from the members of the committee, indicate that her ability to recall the conversation and events which took place may be impaired. [A] expressed difficulty in remembering or understanding almost every other detail related to the action except this one particular conversation.

In fact, the original statement sent to the Disciplinary Board by [A] intimated that [Respondent] had not been the source of her information with regard to the supposed continuation of the sheriff's sale. "On November 25, 1980 we still had been under the impression that the sale had been postponed and [Respondent] did not tell me any different on the phone." Respondent had no reason to tell his client that the sale had been continued. The sale was irreversible and the result public.

## CONCLUSION OF LAW

It is the conclusion of the hearing committee that the Office of Disciplinary Counsel has failed to establish by a clear preponderance of the evidence[5] that respondent, [ ] Esq., violated any of the Disciplinary Rules alleged.

## RECOMMENDED DISPOSITION
## OF THE PETITION

It is the recommendation of the hearing committee that the petition for discipline be dismissed.

## ORDER

JOHNSON, Chairman, and now, August 25, 1982, the report and recommendation of hearing

5. [ ] Appeal, 458 Pa. 439, 328 A. 2d 471 (1974)

committee [   ] dated August 3, 1982, finding that no violation had been established and that the petition for discipline be dismissed is accepted; and it is ordered and decreed that the charges against [Respondent] be dismissed.