**In re Anonymous No. 81 D.B. 90**

Disciplinary Board Docket no. 81 D.B. 90.

SCHILLER, *Member,* February 25, 1992—

### HISTORY OF PROCEEDINGS

On July 18, 1990, the Office of Disciplinary Counsel (petitioner) filed a petition for discipline against [    ] (respondent) charging him with the mishandling of client funds. The petition alleged that respondent had violated the following Disciplinary Rules of the Code of Professional Responsibility:

(a) D.R. 1-102(A)(3)—which provides that a lawyer shall not engage in illegal conduct involving moral turpitude;

(b) D.R. 1-102(A)(4)—which provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(c) D.R. 1-102(A)(6)—which provides that a lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

(d) D.R. 9-102(A)—which provides that all funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, be deposited in one or more identifiable bank accounts wherein no funds belonging to the lawyer or law firm shall be deposited; and

(e) D.R. 9-102(B)(3)—which provides that a lawyer shall maintain complete records of all funds, securities and other properties of a client coming into the possession of a lawyer and render appropriate accounts to the client regarding them.

On August 13, 1990, respondent filed an answer to the petition for discipline. Respondent admitted that he had acted as an escrow agent, but stated that he "did not know that the trust account was overdrawn and he believed that there were sufficient funds to cover the checks..." that he had executed. Due to this opinion, respondent requested that no disciplinary action be imposed.

On August 14, 1990, the matter was referred to Hearing Committee [    ], which was chaired by [    ], Esquire, and included members [    ], Esquire, and [    ], Esquire.

A hearing was scheduled for October 22, 1990. Respondent filed a motion for continuance on October 5, 1990. The chairman of the Disciplinary Board granted this motion and rescheduled the hearing for December 17, 1990.

On September 24, 1991, the Hearing Committee filed its report and recommended that respondent be administered a private reprimand.

Petitioner filed a brief on exceptions on October 15, 1991, and recommended that respondent receive public discipline.

Respondent filed a brief opposing exceptions on October 25, 1991, in which he requested that the Hearing Committee's recommendation of a private reprimand be upheld.

Respondent requested oral argument on these exceptions.

Oral argument was held on December 5, 1991, before a panel chaired by Board Member Berle M. Schiller, Esquire, and included Member Thomas A. Leonard, Esquire.

The matter was adjudicated at the December 12, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

The board adopts and incorporates by reference herein the following findings of fact, which have been stipulated to between the parties and are amply supported by both the evidence and testimony:

(1) Petitioner, whose principal office is located at 300 North Second Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary

proceedings brought in accordance with the various provisions of the aforesaid Rules.

(2) Respondent, [    ], Esquire, was born in 1927 and is 64 years of age. He obtained both a bachelor's degree and a juris doctorate from [    ] University.

(3) Respondent was admitted to practice law in the Commonwealth of Pennsylvania on April 21, 1958. He had maintained an office as a sole practitioner at [    ].

(4) Prior to the matter at hand, respondent maintained a spotless disciplinary record with no prior violations throughout his lengthy legal career.

(5) During the period between 1983 and 1987, respondent represented [A] Co. and its principal, [B], in various matters including a Chapter XI bankruptcy proceeding and negotiations for sale of a radio station and Federal Communications Commission license owned by the corporation.

(6) In regard to safeguarding clients' funds, respondent maintained a lawyer trust account (Account No. [    ]) at [C] Bank, [    ], [    ] County, Pennsylvania.

(7) A statement documented on October 19, 1984, maintained that the trust account's beginning balance was $1,560.70 as of September 19.

(8) On October 22, 1984, [B], the Estate of [D], and the [A] Co., entered into an agreement to sell the assets of [A] Co. to [E] Inc.

(9) Under the terms of the agreement, [E] remitted a $15,000 deposit to respondent. This deposit was to be refunded if either the Bankruptcy Court or the FCC failed to approve the sale.

(10) Respondent received the $15,000 in two installments on the following dates: the first was on October 4, 1984, and the second was on November 2, 1984.

(11) On October 4, 1984, respondent deposited the first $5,000 of [E] Inc. funds into the trust account.

(12) On October 19, 1984, the following checks, neither of which related to the [A] transaction, were charged against the trust account:

| Cleared | Check No | Amount |
|---|---|---|
| October 19, 1984 | No. 3799 | $2,751.78 |
| October 19, 1984 | No. 3797 | $ 355.75 |
| | | Total $3,107.53 |

(13) The checks charged against the trust account on October 19, 1984, reduced the balance in the trust account to $3,453.17.

(14) Respondent deposited the second installment of $10,000 into the trust account on November 2, 1984.

(15) Between November 5, 1984, and January 23, 1985, respondent executed the following 13 checks against the trust account:

| Date Posted | Date Made | No. | Amount | Payee |
|---|---|---|---|---|
| 11/08/84 | 11/05/84 | 3800 | $ 13.50 | Recorder of Deeds |
| 12/20/84 | 12/19/84 | 3801 | $ 400.00 | [respondent] |
| 12/27/84 | 12/24/84 | 3802 | $1,000.00 | [respondent] |
| 01/02/85 | 12/31/84 | 3803 | $ 500.00 | [respondent] |
| 01/07/85 | 12/31/84 | 3804 | $ 446.00 | Tax Claim Bureau |
| 01/14/85 | 01/11/85 | 3805 | $ 400.00 | [respondent] |
| 01/16/85 | 01/14/85 | 3806 | $ 64.00 | Recorder of Deeds |
| 01/16/85 | 01/14/85 | 3807 | $ 50.00 | Recorder of Deeds |
| 01/28/85 | 01/22/85 | 3808 | $ 86.53 | Tax Claim Bureau |
| 02/13/85 | 01/22/85 | 3809 | $ 145.51 | [F] |
| 01/24/85 | 01/22/85 | 3810 | $ 6.00 | Prothonotary |
| 01/23/85 | 01/22/85 | 3811 | $ 43.50 | Recorder of Deeds |
| 02/06/85 | 01/23/85 | 3812 | $ 7.00 | Sec. of Com. |
| | | Total | $3,162.04 | |

(16) These 13 checks, in the aggregate amount of $3,162.04, reduced the balance in the trust account to $10,530.17 as of January 25, 1985; this total was $4,469.83 less than respondent was responsible for maintaining on behalf of the [A] transaction. Furthermore, none of these disbursements were related to the [A] transaction, and in fact, four checks (Nos. 3801, 3802, 3803 and 3805) in the aggregate amount of $2,300 were payable directly to respondent himself.

(17) Between November 2, 1984, and February 14, 1985, the trust account remained continually out of trust with regard to [A]. In fact, during that three-month span there were only two brief occasions in which the trust account contained $15,000 and that was because other clients' funds had been deposited into it.

(18) During all of 1984, respondent only maintained the following as records of his trust account:

(a) Handwritten entries on the inside file folder of deposits and disbursements;

(b) Deposit slips;

(c) Entries on the checkbook stub portion of his trust account checkbook; and

(d) Bank statements.

(19) At no time did respondent maintain a formal double-entry journal or ledger system.

(20) Respondent's trust account was not reconciled at any time between his receipt of the first [A] funds in October 1984 and the end of 1985.

(21) On or about January 29, 1985, respondent contacted [G], Esquire, who had filed the [B] bankruptcy proceeding, and he requested permission to withdraw the sum of $7,500 as an advance on fees claimed from [A]

Co. Respondent confirmed this request in a letter dated February 1, 1985.

(22) Respondent transmitted written correspondence outlining the proposed advance to both attorney [H], counsel for [I] Bank of [    ], on February 5 and February 14, 1985, respectively.

(23) Pursuant to this arrangement, on February 14, 1985, respondent wrote to himself a check from the trust account (Check No. 3819 in the amount of $7,000). On March 1, 1985, further to this arrangement, respondent wrote to himself a second check (Check no. 3822 in the amount of $500).

(24) On May 21, 1985, respondent filed a petition to convert the Chapter XI proceeding to a Chapter VII, and he requested approval of the sale of [A] Co.'s assets.

(25) Attorney [K] was appointed trustee in bankruptcy on June 3, 1985.

(26) Adversary proceedings ensued, one of which eventually resulted in a motion by [K] to hold respondent in contempt. A hearing on this motion was held on September 15, 1987. At issue in the hearing was whether the trustee in bankruptcy was entitled to review certain trust account records which respondent felt were privileged.

(27) From October 4, 1984, up to and including November 8, 1985, respondent failed to maintain sufficient funds in the trust account to encompass his obligations to [A] and [E], as well as to other clients.

(28) On November 8, 1985, the balance in respondent's trust account was $3,769.89; this amount was $3,730.11 short of [A's] $7,500.

(29) Also on November 8, 1985, respondent deposited $35,000 of his own funds into the trust account. Then on that same day, respondent transferred Check No. 3838 in the amount of $15,000, to an interest bearing account as a separate account for the [A] escrow.

(30) It was not until some point in 1986 that respondent reconciled his trust account and discovered certain discrepancies.

## CONCLUSIONS OF LAW

The board has determined that respondent's aforementioned conduct was a violation of the following Disciplinary Rules of the Code of Professional Responsibility:

(a) D.R. 9-102(A)—which provides that all funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, be deposited in one or more identifiable bank accounts wherein no funds belonging to the lawyer or law firm shall be deposited; and

(b) D.R. 9-102(B)(3)—which provides that a lawyer shall maintain complete records of all funds, securities and other properties of a client coming into the possession of a lawyer and render appropriate accounts to the client regarding them.

## DISCUSSION

The matter presently before the board involves the resolution of two issues. First, it must be determined whether respondent's actions have constituted a violation of either the Code of Professional Responsibility or the Rules of Professional Conduct. Second, if a violation is established, a pronouncement of the appropriate discipline in light of the mitigating circumstances must be prescribed.

## A. ETHICAL VIOLATIONS

The first issue of whether respondent has acted in violation of his ethical responsibilities has been answered in the affirmative. Respondent has acknowledged that he deposited "personal funds into a [client] trust account." In addition, it has been stipulated that "respondent did not maintain a formal double-entry journal or ledger system."

The Hearing Committee has articulated the Code sections and discipline it believes is substantiated by these circumstances. Traditionally, disciplinary proceedings are de novo at every stage of contemplation, *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872, 875 (1986). Thus, the board has the opportunity to adopt the Hearing Committee's recommendation, but is not bound by its findings.

In this instance, the board slightly deviates from the Hearing Committee in regard to the determination of code sections violated by respondent. Both agree that respondent's handling of client funds constituted a violation of D.R. 9-102(A): "All funds of clients paid to a lawyer ... *shall* be deposited in one or more identifiable bank accounts...." (emphasis added)

Additionally, the board has found that respondent's record keeping was deficient and in opposition to D.R. 9-102(B)(3): "A lawyer *shall* ... [m]aintain complete records of all funds...." (emphasis added)

## B. RECOMMENDED DISCIPLINE

The positive affirmation of respondent's violations has triggered contemplation of the second issue—determining

what constitutes appropriate discipline. The Pennsylvania Supreme Court has held that "disciplinary sanctions 'are not primarily designed for their punitive effects, but for their effect of protecting the public and the integrity of the courts from unfit lawyers.'" *Office of Disciplinary Counsel v. Kanuck,* 517 Pa. 160, 535 A.2d 69, 74 (1987), citing *In re Berlant,* 458 Pa. 439, 441, 328 A.2d 471, 473 (1974). Furthermore, within *In re Anonymous No. 19 D.B. 79,* 14 D.&C.3d 779 (1980), it was stated that although all violations of professional ethics are considered to be serious, there are "graduations of seriousness by the various forms of discipline..." that have been incorporated into the system.

In the present matter, respondent represented [A] Co. in a proposed sale of assets, for which he received and deposited two monetary installments into a client trust account; on October 4, 1984, respondent obtained the amount of $5,000, and on November 2, 1984, he obtained the remainder of the installment in the amount of $10,000. Due to respondent's undocumented withdrawals and failure to periodically reconcile his trust account, the trust fell out of trust between October 1984 and November 1985. Furthermore, it was during that time period in which respondent admittedly commingled funds when he deposited personal funds into the client trust account as a "cushion."

The Supreme Court of Pennsylvania has held that there is no *per se* rule requiring a standard discipline in situations of commingling. See *Kanuck,* 535 A.2d at 76. Therefore, in review of the applicable case law and in concurrence with the Hearing Committee, the board has found that

respondent's actions of commingling and deficient documentation of transactions, constitutes the imposition of a private reprimand.

The case that is most similar to the present matter which depicts this sanction is *In re Anonymous No. 103 D.B. 84,* 38 D.&C.3d 191 (1985). In that case, "the respondent" also had held client funds and personal funds in the same account. In addition, "that respondent's" account "fell below the sum which belonged to the clients" due to his poor bookkeeping. In assessing the circumstances, it was stated that "the respondent's" actions were "not the result of a fraudulent scheme, nor were the acts committed with any malicious intent." Ultimately, "that respondent" was administered a private reprimand.

In a second case, *In re Anonymous No. 102 D.B. 84,* 38 D.&C.3d 235 (1985), "the respondent" not only commingled funds, but he also utilized them as well. Among the factors considered in "that respondent's" defense were that he enjoyed "a good reputation amongst his peers for truthfulness and honesty" and that he had not "intentionally prejudiced or damag[ed] his clients' case...." That case also resulted in a private reprimand.

The board holds that there are material similarities between these two cases and the case at issue; therefore, respondent should also be administered a private reprimand. Respondent has commingled funds, but he did so without prejudice to his clients. In addition, although respondent's bad bookkeeping resulted in the client account falling out of trust, this was done inadvertently and with neither malicious nor fraudulent intent. Furthermore, it has been stipulated to that it was not until 1986 that respondent ever became aware that certain dis-

crepancies existed in his client trust account. Upon learning of these discrepancies, respondent was embarrassed and remorseful. In fact, he has made attempts to rectify the situation and has thoroughly exhibited cooperation throughout these proceedings.

There have been cases of commingling which demanded higher forms of discipline such as *In re Anonymous No. 27 D.B. 85,* 41 D.&C.3d 579 (1986), however, this case is clearly distinguishable from the present matter. In that case, "the respondent" not only commingled funds, but he also failed to inform his client of a default judgment against his client. Thus, the client's expected funds were not properly disbursed. "The respondent" failed to explain the reason despite the client's repeated requests for information. That case resulted in a public censure due to the combination of egregious behavior caused by "the respondent" toward his client's case.

In an equally dissimilar case cited by petitioner, *In re Anonymous No. 132 D.B. 88,* 7 D.&C.4th 331 (1990), a two-year suspension was administered. The circumstances of that case depict that "the respondent" had not only commingled funds, but had also converted the funds for personal use on such items as the following: his wife's hair cuts, cigarettes, soda pop and food. When the clients requested "the respondent" to account for their funds, he neither provided an accounting nor disbursed their monetary rewards.

In the matter at issue, respondent has commingled, but has not blatantly converted funds. But even if a technical conversion is found, it was absent of malicious intent. In light of this and coupled with the other factors, respondent should still be administered a private repri-

mand. After all, respondent has practiced law for over 30 years while maintaining an unblemished disciplinary record. In addition, his relationship among his professional peers on the county bar is good and his reputation for honesty is excellent, as was testified to by [L], Esquire. Finally, the violations described occurred six years ago between 1984 and 1985. Since that time, no further complaints have been issued against respondent.

## DETERMINATION

The Disciplinary Board of the Supreme Court of Pennsylvania determines that respondent [    ] shall receive a private reprimand. Costs are to be paid by respondent.

Dr. Gilbert dissents and would recommend a short suspension.

Ms. Flaherty and Mr. Leonard did not participate in the adjudication.

## ORDER

And now, February 25, 1992, upon consideration of the report and recommendation of Hearing Committee [    ] filed September 24, 1991, and oral argument before a panel of the board; it is hereby ordered that the said [respondent] of [    ] County be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(a)(5) of the Pennsylvania Rules of Disciplinary Enforcement. Costs are to be paid by the respondent.