## Krehel Appeal.

Argued May 27, 1965. Before BELL, C. J., MUSMAN-
NO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

W. J. *Krencewicz,* with him *Myron M. Moskowitz,*
for appellant.

*Samuel Gubin,* for appellee.

OPINION BY MR. JUSTICE JONES, October 4, 1965:

This is an appeal from an order of the Court of
Common Pleas of Northumberland County which di-
rected that Peter Krehel, a member of the bar of that
court, be suspended from the practice of law in that
court for a period of six months.

On October 15, 1964, Krehel received a letter from
the Secretary of the Board of Censors of Northumber-
land County (the Board), whereby Krehel was in-

formed that a complaint had been made to the president judge of the court charging him with unprofessional conduct "in that [he] did on September 18, 1964, as Chairman of the Board of Arbitrators appointed to hear an action in trespass, . . . being the case of Elroy Hack v. Martin A. Ryan, solicit from Elroy Hack, plaintiff in said case, the sum of Twenty-five ($25) Dollars, and said sum was paid to [him], in consideration of [his] offer to take care of the hearing in behalf of Plaintiff, held September 24, 1964." The letter further stated that the court had referred the complaint to the Board and that a hearing was to be held on November 9, 1964.

After taking testimony from all parties involved, the Board made a finding that Elroy Hack actually paid $25 to Krehel but that such payment was made in consideration of services to be rendered by Krehel in connection with a criminal matter and that the money had *not* been paid for the purpose of influencing Krehel's action as an arbitrator in the civil case of *Hack v. Ryan*. While the only charge made against Krehel was the solicitation and acceptance of a bribe and while no charge was made of any other unprofessional conduct, the Board made a finding that Krehel had a personal bias and animosity toward Ryan, the defendant in the arbitration case, and that he acted unethically in failing to disqualify himself as an arbitrator in that case. The Board, therefore, recommended that Krehel be disciplined because of his failure to disqualify himself as a member of the board of arbitration.

Upon receiving the Board's report and recommendation, the court below, without a hearing de novo, adopted the Board's findings and conclusions, and entered the order of suspension from which this appeal has been taken.

The instant appeal is taken under the Act of May 19, 1879, P. L. 66, §1, 17 P.S. §1663, which expressly

provides that "it shall be the duty of said supreme court to review the same *de novo.*" (Emphasis supplied). See also: *Schlesinger Appeal,* 404 Pa. 584, 588, 172 A. 2d 835. Since the review is de novo, we are not bound by the findings and conclusions of the court below, but are free to make our own determination as to the weight and credibility of the evidence, and the inferences to be drawn therefrom, bearing in mind the well-established principle that a preponderance of evidence is necessary to establish an attorney's unprofessional conduct and the proof of such conduct must be *clear* and *satisfactory*: *Lemisch's Case,* 321 Pa. 110, 116, 184 A. 2d 72. With the above guidelines in mind, we pass to an examination of the evidence presented on this record.

Krehel, together with two other attorneys, had been appointed as a member of an arbitration board to hear a civil action of trespass arising from an assault and battery on one Elroy Hack by one Martin Ryan. Prior to the civil action, Ryan was convicted of criminal assault and battery and, as part of the sentence, he was ordered to pay Hack's hospital bill which he failed to do. Krehel did not represent Hack in that proceeding or in any other matter. Subsequent to the assault and battery action, Ryan sold his tavern to one Leon Long and, in this transaction, Long was represented by Krehel. Long still owed Ryan some money on account of the purchase price. With this as background, Hack instituted the civil action against Ryan for the damages resulting from the assault and battery. Hack's attorney in this matter, Elizabeth Kury, testified that she intended to attach the debt which Long owed to Ryan if Hack obtained a judgment in the civil action against Ryan.

Apparently by unanimous vote, the board of arbitration awarded Hack damages of $1,100 though he had claimed damages in the sum of $1,686.64. On the morn-

ing following the arbitration hearing, Hack told his attorney that he had paid Krehel $25 "to take care of these proceedings." Hack's attorney brought this matter to the attention of the court below and the court referred the matter to the Board.

At the hearing before the Board, Hack testified, without corroboration, that he had paid $25 to Krehel in the men's room of Long's tavern. According to Hack, there was no understanding as to the purpose for the payment of this money to Krehel and Hack stated that he didn't know that Krehel was going to do anything in his favor. Hack changed his story frequently; at one point he said that he paid the money for services which Krehel was to render him in connection with a criminal matter, but in other parts of his testimony he said that nothing was said between him and Krehel with reference to the purpose of the payment and at still other parts of his testimony he stated that he did not know for what purpose he had paid the money.

Hack's testimony was categorically and emphatically denied by Krehel who testified that he was never in the men's room of Long's tavern, that Hack had never paid him any moneys and that he had gone to Long's tavern solely for the purpose of collecting the balance of a fee which Long admittedly owed him for services rendered in connection with the purchase of the tavern from Martin Ryan, who happened to be the defendant in the arbitration matter.

Long, the tavern proprietor, denied Hack's story that he, Long, had prearranged a meeting between Krehel and Hack, that Hack merely happened to be in the tavern when Krehel entered and that he, Long, introduced Hack to Krehel. Long, likewise, denied that Krehel went into the men's room or had left the bar area of the tavern during the entire time. This part

of Long's testimony was corroborated by Eleanor Yeager who had accompanied Krehel into the tavern.

Our examination of the testimony, summarized in part above, clearly indicates that the case against Krehel rested entirely upon the uncorroborated testimony of Elroy Hack whose testimony was emphatically denied by all other persons concerned. Hack's testimony must be characterized as rambling, confusing and, in parts, incoherent. In reply to a question asked of him by the Board as to whether the payment was in consideration of Krehel's "taking care" of Hack at the hearing before the Board of Arbitration, Hack replied "Yes, I guess it is. . . . I . . . well, I paid him twenty-five dollars. That is all I know. . . . Well, I don't know to tell you the truth about it. They—the twenty-five dollars I paid to him regardless of whether that is what it was for or not, I don't know." Considering the confusion in Hack's testimony and the denials of his statements made by all other parties involved we cannot find that the evidence presented on this record is sufficient qualitatively, i.e., of such clarity and conviction to sustain the action of the court below. For this reason, the lower court's order suspending Krehel cannot be sustained and must be reversed.

Moreover, the order of the lower court must be reversed because Krehel was found guilty of an offense with which he had not been charged. The Board made a finding that Krehel had neither solicited nor accepted a bribe, a finding expressly adopted by the court below. Inasmuch as the only charge against Krehel was a charge of accepting a bribe and inasmuch as that charge had not been sustained under the Board's findings that should have ended the matter. However, the Board made a further finding that Krehel had a personal bias and animosity against Ryan and concluded that Krehel should be disciplined for failing to disqualify himself as a member of the Board of Arbitra-

tion. This view of the matter was also apparently adopted by the court below despite the fact that Krehel had never been charged with unprofessional conduct upon this ground. In *Maginnis's Case*, 269 Pa. 186, 112 A. 555, we disapproved the practice of basing disciplinary action upon matters which had not been included in the formal accusation. In *Maginnis* we said: ". . . but, more than this, we think neither this charge, nor the others not covered by the statement filed in support of the rule to disbar, should have been investigated for the purpose of making findings against respondent—as the basis of his disbarment—without formally reducing the charges to writing, in order to give him due and proper notice thereof." (269 Pa. at 195, 196).

The Board and the court below erred in finding Krehel guilty of unprofessional conduct upon a charge of which he had not been formally accused.

Order reversed.