## In re Anonymous No. 12 D.B. 78

Disciplinary Board Docket no. 12 D.B. 78.

## REPORT OF HEARING COMMITTEE

## STATEMENT OF THE CASE

On February 28, 1978, a petition for discipline was filed against respondent alleging violations of four disciplinary rules, specifically, D.R. 1-102(A)(4), dealing with conduct involving dishonesty, fraud, deceit, or misrepresentation; D.R. 6-101(A)(3), dealing with neglect; D.R. 9-102(B)(3), dealing with maintaining proper records and rendering appropriate accounts of a client's funds, and D.R. 9-102(B)(4), dealing with prompt payment to the client of funds he is entitled to receive.

Respondent filed an answer admitting some averments and denying others. A hearing was held before this hearing committee at which assistant

disciplinary counsel offered petitioner's exhibit 1, which was a stipulation, and petitioner's exhibit 2, which was part of the deposition of [A], together with deposition exhibits A through S, all of which were admitted into evidence. Respondent testified in his own behalf, offered the rest of the [A] deposition, and respondent's exhibit A, all of which were received into evidence. Respondent also asked leave to submit, at a later date, respondent's exhibit B, which would be a letter to [A] from Mr. [B] of the [C] County Probation Office. This exhibit has not been received to date. No briefs were submitted by either respondent or petitioner.

## RULINGS OF EVIDENCE

1. The deposition of [A], taken at an investigatory hearing held before the petition for discipline was filed, was taken for possible use at trial because [A's] work requires him to be frequently absent from Pennsylvania for long periods of time (deposition tr. 5-7). Petitioner offered parts of the deposition into evidence. Respondent objected for two reasons: First, because [A], as the complainant, was more like a plaintiff than an ordinary witness, and respondent contended it was absolutely necessary for the hearing committee to evaluate, first hand, his demeanor, attitude, and bearing. The objection was overruled. In view of the committee's perception of [A] as a witness lacking in credibility, the objection is essentially moot (tr. 9-13).

Respondent's second reason for objecting related to the admission of only those parts of the deposition and exhibits offered by petitioner. He contended the entire deposition should be offered. The objection

was overruled, but respondent was permitted to offer the balance of the deposition and exhibits as a part of his case, and he did so. As a practical matter, the entire deposition was considered by the committee in arriving at its recommended findings and conclusions; so once again, the objection is essentially moot (tr. 14-23).

2. Respondent attempted to testify regarding what attorneys [   ], [   ], and/or [   ] told him regarding the lawsuit filed by them for [A] against respondent. Petitioner objected on the grounds of hearsay. The objection was sustained (tr. 30-31).

3. Respondent wished to call Mr. [A] for further cross-examination and as a witness for his own case (tr. 113, 116-119). The committee declined to continue the hearing for further testimony, and respondent acquiesced in the ruling (tr. 116).

## FINDINGS OF FACT

1. Respondent is an attorney at law who graduated in 1964 and is engaged in active practice in [C] County. Since January, 1978, respondent has been employed as a full-time assistant district attorney. He does not presently engage in private practice. Prior to January, 1978, for a period of about 10 years, he worked as a part-time assistant district attorney and also engaged in private practice at [   ] Street (tr. 25, 86-87, PE 1, paragraph 1).

2. Complainant, [A], is a senior projects engineer, and, during the course of cross-examination, admitted he is also a lawyer who obtained his law degree in 1963, one year before respondent obtained his law degree. [A] has not taken any bar examinations and does not actively practice law except, perhaps, in his own behalf (deposition tr. 8, 124, 152, 154-155).

3. From at least 1967 through 1973, respondent and [A] had been friends and, on occasion, business associates. Respondent had also, on a more or less continuing basis from 1971 through the spring of 1974, represented [A] as his attorney with regard to various matters during that period of time (tr. 25, 63-64; deposition tr. 61, 155-164).

4. In the second half of 1971, respondent undertook to represent [A] in connection with the legal aspects of [A's] deteriorating marriage, specifically, support hearings and a contested divorce.

5. In October, 1971, Mrs. [A] filed a domestic relations complaint for support of herself and their three children (deposition exhibit A). On December 8, 1971, Mrs. [A] filed a complaint in divorce (deposition exhibit F).

6. On December 23, 1971, a support hearing was held before the Honorable [   ], who ordered [A] to pay support in the amount of $650 a month (deposition exhibit A); the first payment being due on that same date, December 23, 1971 (deposition exhibit B).

7. Deposition exhibit B is a case ledger from domestic relations court, indicating the receipts and disbursements of support payments made in the [A] case. This ledger and deposition exhibits "N" and "O" establish the following: On January 4, 1972, Mr. [A] paid $1,300 by check to the [C] County probation office. The check bears the notation "Jan. Feb. [Mrs. A]/kids support." (deposition exhibit N; deposition tr. 20, 30). This payment represents support for the months of January and February, which payments were due on December 23 (for January) and January 23 (for February) respectively.

8. On February 29, 1972, [A] paid $650 by check to the [C] County probation office. This check bears

the notation "[Mrs. A] March Support." (deposition exhibit O; deposition tr. 137).

9. No payment was made on March 23 for April's support, but on April 18, 1972, [A] made a late payment of $650 to the [C] County probation office (deposition exhibit B) for the month of April.

10. Deposition exhibit B shows that no support payment was made in either April or May for the month of May, 1972; and for the first time, the "old balance pick-up" column shows a delinquency of $650.

11. During the months of April and May, 1972, divorce hearings were being held in the [A] case, which [A] was contesting (tr. 107; deposition tr. 72-75).

12. On June 6, 1972, a bench warrant was issued for [A] because of his failure to make support payments. On June 15, he paid the probation office $1,950 to cover existing arrearages and future payments (deposition exhibit E and tr. 59, 107).

13. On June 15, 1972, a divorce decree was handed down terminating the [A] marriage (deposition exhibit F). Thereafter, deposition exhibit B shows that [A] continued to pay support for his children, which payments were sometimes timely and sometimes in arrears.

14. Respondent continued to represent [A] as his attorney on various matters until early 1974, after which respondent did no further work for [A] (tr. 63-64).

15. On December 23, 1971, [A] deposited into respondent's personal account the sum of $1,000. The deposit slip bears the handwritten notation "[Respondent], I/t/f [A]." There was much speculation, but no clear evidence as to whose handwriting that

was (deposition exhibit C, lower half, deposition tr. 12-15; tr. 26, 101). But there is no dispute that the deposit was made personally by [A] on a deposit slip given to him by respondent. And [A] photocopied the deposit slip at the bank when he made the deposit (deposition tr. 15, 91).

16. On January 5, 1972, [A] deposited an additional $1,006.92 into respondent's personal account, which amount represents the sum of two checks payable to [A] and his father, which they endorsed over and which [A] deposited into respondent's account (deposition tr. 13-14, deposition exhibits D and E). The deposit slip bears the typewritten notation "In trust for [A] by check of: [    ] Twp. Municipal Authority $760.00 (illegible) $246.92."

17. The aforesaid $2,006.92 was not given to respondent in trust. [A] testified that at the time [A] deposited the above $1,000 and $1,006.92, respectively, into respondent's account, respondent had told [A] that respondent was in need of "some dollars, cash dollars." (deposition tr. 17). [A] thereupon told respondent "Here is the money that you can use it but, you know, it's for payment of the support, the support payments in the future." (deposition tr. 18; see also deposition tr. 22-23, 25, 80).

18. While the evidence is conflicting, the committee finds that [A] directed respondent to make support payments for March, April, and May with the funds in question (see deposition exhibit H).

19. There is no dispute that respondent made no support payments in behalf of [A] (PE 1, paragraph 6, admitting petition for discipline, paragraph 12). [A] has filed a civil suit against respondent for the recovery of these funds, which suit is presently

pending. The suit was filed after complaint was made to the disciplinary board in this matter (tr. 89, 96).

20. Respondent, who claims the $2,006.92 was a personal loan to him from [A] (tr. 26, 36, 43-52), admits that he presently owes [A] money but claims the net amount owed is approximately $500 because of unpaid legal fees which [A] owes him, for which he never billed [A] (tr. 36, 67).

## DISCUSSION

The crux of this controversy revolves around the question: Was the $2,006.92 a personal loan to respondent or was it a loan given with the proviso that respondent pay certain support payments for [A] as they fell due? The difficulty with this case is that the hearing committee found both respondent's and [A's] versions of the facts unsatisfactory and unpersuasive. Both versions raised more questions than they answered. However, since petitioner bears the burden of proving professional misconduct by a preponderance of the evidence and since the proof must be "clear and satisfactory" (Krehel Appeal, 419 Pa. 86, 213 A. 2d 375, 377 (1965)), we turn to a consideration of [A's] testimony and the deposition exhibits offered in conjunction therewith, which was the only proof offered by petitioner on the disputed issue.

The committee did not find [A] to be a credible witness, not only because of his demeanor on the stand which (observed by only one committee member) was at times evasive, erratic, and somewhat belligerent, but more importantly, because

his testimony in certain key areas was contradictory and inconsistent, and his inability to recall had at times a selective quality which detracted from its credibility.

When he first made his complaint to the disciplinary board in this case, [A] charged that respondent had been directed to pay [A's] support payments for the months of January, February, and March of 1972 (deposition tr. 130-131). In his testimony, however, [A] swore that respondent had been charged with the duty of making payments for the months of February, March, and April (deposition tr. 128-129). And in a letter to Mr. [B], of the [C] County court, dated January 24, 1972, he stated that respondent would make payments in his behalf for the months of March, April, and May (deposition exhibit H). This apparent inconsistency may be partly explained by [A's] failure to consistently describe a month's support payments in terms of either the month in which it was payable or the month for which it was payable. Thus, a support payment for the month of March, which was payable on February 23, could either be called the February payment or the March payment.

Although [A's] complaint to the disciplinary board (that respondent was supposed to make the December, January, and February payments) is inexplicably inconsistent, his testimony, that respondent was supposed to make the February, March, and April payments is consistent with his earlier letter to Mr. [B] (deposition exhibit H) in which he stated that respondent would make the payments for the months of March, April, and May. In short, the first payment that respondent was given the responsibility of making was on February

23 for the month of March. In point of fact, however, [A] himself made that support payment on February 29, 1972. Why did he make the February payment (for March) if in fact he had given respondent the funds to do so? He explained that when the payment was not received on the 23 of February, he got "frantic" calls from his father (or his wife, or his children) who complained that the payment was late, which is why he made the payment himself on February 29 (deposition exhibit O; deposition tr. 32, 99, 137).

[A] declined to explain why he made the April 1972, support payment (which was also late) if, as he testified, respondent had been given the funds to do so. When asked to explain, he responded: "A: I have no reason to recall that trivia. Q: You don't have any reason to recall that? A: No, I consider it trivia, and I don't see—I don't want to waste my time trying to remember the details of that." (deposition tr. 137).

Had [A's] testimony been the only proof that respondent had been directed to make support payments for March, April, and May with the funds he received, it would have fallen short of the required preponderance. But the corroborating evidence of [A's] letter to Mr. [B] (deposition exhibit H), obtained from the records of the [C] County Domestic Relations Court, and written ante litem motam, warrants the conclusion that respondent had indeed been directed to make support payments with the funds he received from [A], even though he was free to use them until needed. The committee did not find that the funds in question had been given to respondent in trust. It is true that the deposit slips were marked "i/t/f" and "in trust for" (deposition

exhibit C). And [A] testified that he believed he was placing the two deposits in respondent's trust account and that respondent himself led him to so believe (deposition tr. 23, 25, 34). But this contention of a trust does not square with [A's] own admission that he told respondent that respondent was free to use the funds for his personal needs until needed for the support payments. It is elementary that a trustee may not use trust funds for his personal needs. One could understand a layman making a hybrid transfer of this sort to an attorney who was also his friend and believing at the same time that the funds had been given in trust. But [A] is no layman. He is a lawyer, and presumably, knows what a trust is. His alleged belief that he was placing the money in trust is not credible. [A's] testimony regarding the deposit slips themselves was remarkably inconsistent, which, while not dispositive, contributed to the general impression that his testimony lacked credibility.

Regarding the deposit slip dated December 23, 1971 (deposition exhibit C, lower half), [A] testified variously (1) that he had no recollection of who had made it out, that it could have been respondent, or the girl at the bank, or respondent's secretary (deposition tr. 15); (2) that he did not recall whether the slip was blank or filled out when he got it from respondent (deposition tr. 24); (3) that respondent himself filled the deposit slip out before [A] in the courthouse (deposition tr. 75); and (4) that he didn't recall seeing respondent fill in the deposit slip, but that it was already filled out when respondent gave it to him at the courthouse (deposition tr. 89).

Regarding the typewritten deposit slip, dated January 5, 1972 (deposition exhibit C, upper half),

[A] testified variously (1) that he did not recall where it was that he got it (deposition tr. 24); (2) that he recalled respondent giving it to his secretary to type (deposition tr. 89-90); (3) that he did not see her actually type it (deposition tr. 90); (4) that he did not specifically hear respondent direct her how to type it (deposition tr. 90); (5) that he ([A]) himself may have told her what to type by giving her a copy of the first deposit slip (deposition tr. 90-91). Certain it is, however, that [A] himself took both slips to the bank for respondent and made both deposits himself (deposition tr. 15). Regarding whether or not respondent saw the deposit slips after the deposits, [A] testified, "I remember them going back," but could not recall how, when, where, or to whom he gave the copies (deposition tr. 91-92).

The record contains numerous other puzzling instances of [A's] inconsistent and contradictory testimony. But no useful purpose would be served in cataloging all of them here.

Applying the law to the facts as found, since the funds were not given in trust but were given to respondent to use for his personal needs, respondent's failure to return the funds to [A] or his designee was not dishonest or fraudulent within the scope of D.R. 1-102(A)(4) but amounted rather to a failure to pay a personal debt. Respondent's failure to make the support payments for [A] did, however, amount to neglect of a legal matter entrusted to him in violation of D.R. 6-101(A)(3). Finally, since respondent did not receive the funds in trust, he had no duty to maintain records or accounts of those funds or deliver them promptly to his client as contemplated by D.R. 9-102(B)(3) or (4). Those rules would appear to govern the handling and return of funds which belong to a client and which an attorney receives in his capacity as attorney. Those rules

do not appear to apply to a situation in which the attorney is given funds as a personal loan.

## CONCLUSIONS OF LAW

1. The evidence does not establish a violation of D.R. 1-102(A)(4), 9-102(B)(3), or 9-012(B)(4).
2. The evidence establishes a violation of D.R. 6-101(A)(3).

## RECOMMENDATIONS

The committee recommends private reprimand by the disciplinary board under Rule of Disciplinary Enforcement 204(5) for the violation in question.

## ORDER

UNKOVIC, *Chairman*—And now, November 3, 1978, the report and recommendation of hearing committee [ ] dated August 23, 1978, is accepted; and it is ordered and decreed, that said [respondent] of [C] County, be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(5) of the Pennsylvania Rules of Disciplinary Enforcement at the next session of this board.