## In re Anonymous No. 60 D.B. 75

Disciplinary Board Docket no. 60 D.B. 75.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania

UNKOVIC, *Chairman*, May 29, 1979—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (Pa.R.D.E.), the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above proceedings:

### I. HISTORY OF PROCEEDINGS

On October 17, 1975, the Supreme Court of Pennsylvania entered an order suspending respondent from the practice of law as a result of respondent's having been found guilty in the Court of Common Pleas of [A] County, Pa., of a violation of section 3925 of the Crimes Code of December 6, 1972, P.L. 1482, 18 C.P.S.A. §3925, Receiving Stolen Property. It was further ordered that the matter be

referred to the Disciplinary Board for the institution of a formal proceeding.

On March 27, 1978, a petition for discipline was filed by disciplinary counsel against respondent. The basis of the charge was that respondent had been convicted of the crime of receiving stolen property, in violation of the following Disciplinary Rules of the Code of Professional Responsibility: (A) D.R.1-102(A)(3)—A lawyer shall not engage in illegal conduct involving moral turpitude; (B) D.R.1-102(A)(4)—A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; (C) D.R.1-102(A)(5)—A lawyer shall not engage in conduct that is prejudicial to the administration of justice; and (D) D.R.1-102(A)(6)—A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law.

A hearing on the petition was held June 5, 1978, in the office of the Disciplinary Board in [   ], Pa., before hearing committee [   ].

Petitioner and respondent, through counsel, entered into a stipulation, which was marked Exhibit "1," and contained the following facts:

1. That respondent, [   ], is an attorney who, until the time of his suspension by the Supreme Court of Pennsylvania, was admitted to practice law in the Commonwealth of Pennsylvania with his office located at [   ] Street, [   ], [A] County, Pa. Respondent's current residence is [   ], [   ], Pa.

2. That on July 24, 1974, the Grand Jury of [A] County, Pa., returned an indictment at no. 580 May Term, 1974, against respondent, charging respondent with the crime of receiving stolen property involving respondent's alleged possession on or

about May 7, 1974, of approximately $17,000 worth of stolen furniture in violation of Title 18, Pennsylvania Consolidated Statutes, Section 3925.

3. That on September 13, 1974, respondent was found guilty of the above-mentioned criminal offense by the Honorable [B], President Judge of the [ ] Judicial District, specially presiding in [A] County, sitting without a jury; sentencing was deferred pending the filing and disposition of post trial motions.

4. That on August 22, 1975, Judge [B] issued an opinion and order denying respondent's motions for new trial and in arrest of judgment.

5. That on October 10, 1975, Judge [B] suspended the imposition of sentence for a period of five years and placed respondent on probation under the supervision of the Pennsylvania Board of Probation and Parole on the conditions that he pay the costs of prosecution, pay the sum of $3,000 for the use of [A] County and make restitution in the amount of $9,243.68; such sum to be paid through the Clerk of Courts of [A] County under the supervision of the [A] County Probation Department.

6. That on October 17, 1975, the Supreme Court of Pennsylvania entered an order suspending respondent from the practice of law in all courts under the supervisory jurisdiction of the Supreme Court of Pennsylvania and entered a further order referring respondent's conviction to the Disciplinary Board for formal proceedings to determine the extent of the final discipline to be imposed.

7. That on or about June 30, 1976, the Superior Court of Pennsylvania at no. 147 March Term, 1976, by Per Curiam Order, affirmed the judgment of sentence of the Court of Common Pleas, Criminal Division, of [A] County, at no. 580 May Term, 1974.

8. That on December 22, 1977, the Supreme Court of Pennsylvania at no. 225 Allocatur Docket, by Per Curiam Order, denied respondent's petition for allowance of appeal.

The first 10 pages of the transcript of testimony taken at the hearing deal with the introduction of the stipulation and an opening statement by [ ], counsel for respondent. In those pages, it appears counsel for respondent was urging the hearing committee to take into consideration that respondent had no *actual* knowledge, but only *constructive* knowledge of the crime. Disciplinary Counsel, Attorney [ ], rested with the introduction of the stipulation, stating that it covered every aspect which the office of disciplinary counsel wished to prove during the proceedings.

[ ], respondent, took the stand in his own behalf. He is 40 years of age; was born and raised in [ ], Pa., went to [ ] [ ] College; and worked at a training school for retarded children in [ ], New Jersey. He attended some classes at [ ] and then went to law school at the University of [ ] in [ ]. Following his graduation from law school, he worked for a brief time in [ ] and then returned to the [ ] area. There he worked as corporate counsel for two companies. Following that, he went to work with [ ] Legal Services in [ ], [ ] and [A] Counties. In 1972, he became a private practitioner. It was during his private practice that he met a client of the office, one [C], who had been convicted of bank robbery some 10 or 11 years prior to that time. Respondent, at the time, was having marital difficulties and was a father of three children.

Judge [B], upon finding respondent guilty of the crime of receiving stolen property, ordered that respondent pay the costs of prosecution in the amount

of $523.81, pay a fine of $3,000 for the use of [A] County, and make restitution in the amount of $9,243.68.

At the time of the hearing before the committee of the Disciplinary Board in June of 1978, respondent was working for $135 a week and was paying a $45 a week support order for the children. At the time of the hearing he had not made any payments for restitution, costs of prosecution, or for the fine.

However, recent inquiry by the writer to counsel for petitioner and respondent elicited the information that respondent has assigned his interest in an agreement of sale of his home to the insurance company to secure payment of the ordered restitution. The particulars of that assignment are not known. Otherwise there is no indication of any payments for costs of prosecution, the fine, or restitution.

There was some testimony concerning loans made to [C]. As Judge [B] said in his opinion and order in the criminal case:

"There were some other strange events, like defendant loaning [C] money in the past from partnership funds. At about the time these events occurred defendant gave [C] a check for $1,000. [C] said this was to pay the mover for moving the furniture. [Respondent] said it was a business loan or to be used at the races."

In the hearing committee's rather brief discussion of the case, in which it recommended a suspension for a period of five years, the committee stated:

"We feel that respondent here did not commit a crime of commission, but because of what happened, we feel that we must make this recom-

mendation. We have taken into consideration the good conduct of the respondent since his involvement in criminal matter and because of this, we recommend a suspension, rather than disbarment by the Supreme Court."

As set forth in the stipulation, the judgment sentence of the Court of Common Pleas, Criminal Division, of [A] County was affirmed by the Superior Court of Pennsylvania by Per Curiam Order and the Supreme Court of Pennsylvania denied respondent's petition for allowance of appeal by Per Curiam Order.

The hearing committee did not have the record of the trial. However, counsel for respondent summarized for the committee his recollection of the record from the trial.[1] Respondent was living in a home that he had recently acquired in the small municipality of [    ], seven miles from the City of [    ]. It was a ranch-style house with a full basement. In May of 1974, there had been a burglary of a furniture store in [    ] called [    ]. A man who operated a moving and storage business named [D] had been notified of the burglary by police. He was contacted by [C], the chief prosecuting witness against respondent, to transport furniture from a barn south of the City of [    ] to an unknown destination, that he would be told about when he actually appeared to move the furniture. [D] communicated this information to the police and told them that when he moved the furniture he would alert them

---

1. In the transcript of testimony taken before the hearing committee on page 19, respondent was asked by his counsel if his summarization of the facts was substantially correct. Respondent answered that it was substantially correct.

so that they could follow his van. This is what, in fact, occurred.

[D], in the company of [C], transported the furniture to respondent's home, at which point, the furniture was being loaded into respondent's basement. The police arrived; the furniture was in full view and respondent was arrested and charged with receiving stolen furniture.

[C] testified somewhat differently; he had been contacted by respondent and by [D]; that he met with respondent and [D] in respondent's home; that they explained to him that the two of them, [D] and respondent [   ], were going to commit the burglary; and that all they wanted [C] to do was to help as a laborer to move the furniture to [Respondent's] home; that [Respondent] was going to have a party that would be attended by lawyers and policemen who were going to purchase the stolen merchandise. [C], after testimony, pled guilty to the burglary.

Respondent also testified differently and stated that [C] asked him to store the furniture for a short period of time in his empty basement and respondent claimed that he had no indication that the furniture was stolen.

We are not privy to the transcript of testimony in the criminal action; however, Judge [B], in his opinion and order, stated that, in the court's view, the evidence met the required test; that respondent had knowledge of the theft of the furniture. Judge [B] specifically stated: "Defendant simply had to know that the property had been stolen. No other conclusion is credible, despite his denials."

The hearing committee's recommendation was that respondent, [   ], be suspended by the Supreme Court for a period of five years. No exceptions to the

report of the hearing committee were filed by either petitioner or respondent.

## II. DISCUSSION

The board considered the report of the hearing committee and concurs in its finding that respondent be suspended for five years. The hearing committee did not specifically state when the period of five years should commence. The board was unanimous in its position that it would recommend to the Supreme Court that the five-year period begin on October 17, 1975, the date of suspension. Respondent has not practiced law since that time and therefore would be eligible to apply for reinstatement following the termination of the five-year period on October 17, 1980.

Other than the incident involved, respondent appears to have had an unblemished record in his legal career. Respondent has been found guilty of receiving stolen property, a felony under the laws of the Commonwealth of Pennsylvania. Judge [B] sentenced him to a five-year probation. He has been working at menial type jobs since his suspension and has been contributing to the support of his children. He has evidently not had the moneys to repay the restitution and fine and costs. However, he has taken whatever assets he did have, i.e., the real estate, and assigned an agreement of sale to the bonding company.

In evaluating the findings and recommendations of the hearing committee, it must be determined whether or not petitioner met the required burden of proof. There is a "well-established principle that a preponderance of evidence is necessary to establish an attorney's unprofessional conduct and the

proof of such conduct must be *clear* and *satisfactory*."[2] Krehel Appeal, 419 Pa. 86, 89, 213 A. 2d 375, 377 (1965); Berlant Appeal, 458 Pa. 439, 441, 328 A. 2d 471, 473 (1974); In re Shigon, 462 Pa. 1, 19, 329 A. 2d 235, 243 (1974); Office of Disciplinary Counsel v. Campbell, 463 Pa. 472, 345 A. 2d 616 (1975).

The basis of the instant charge was that respondent, having been convicted of the crime of receiving stolen property, was in violation of the Disciplinary Rules of the Code of Professional Responsibility enumerated on page 693 of this report and recommendation. Those rules pertain to illegal conduct involving moral turpitude; conduct involving dishonesty, fraud, deception or misrepresentation; conduct prejudicial to the administration of justice; and, conduct that adversely reflects on his fitness to practice law.

Respondent was found guilty of the crime of receiving stolen property in the Common Pleas Court of [A] County and was sentenced to a period of probation for five years and required to make certain payments as hereinbefore set forth. The judgment of the Court of Common Pleas was affirmed by the Superior Court and the Supreme Court by Per Curiam Order denied respondent's petition for allowance of appeal. The evidence presented to the Disciplinary Board included a stipulation quoted earlier in this report and recommendation. The exhibits to the stipulation include a copy of the indictment, the opinion and order of the trial judge, a copy of the sentence proceedings and other relevant documents.

---

2. Words italicized are emphasized by the court.

In Judge [B]'s opinion and order there was a discussion concerning defendant's [respondent herein] contention that he did not know the property was stolen, that he knew [C] [a participant in the robbery who pled guilty] was moving from his apartment and that respondent had given permission to [C] to store a few things in his basement. He denied that he assisted in any way in unloading the van. In the criminal case respondent contended that the Commonwealth's proof was not sufficient to sustain a charge of receiving stolen goods. The court held that the Commonwealth must prove three distinct elements: (1) That the goods were stolen; (2) That the defendant received such goods; and (3) That he received them knowing that they had been stolen or believing that they probably had been stolen.

It was necessary in the criminal case to prove every element beyond a reasonable doubt, a burden greater than that required in disciplinary actions. Element (1) "That the goods were stolen" was conceded by respondent at the trial. Element (2) "Receipt of the stolen goods" under the Crimes Code, 18 C.P.S.A. §3925(b), means acquiring possession, control or dominion over these goods. The court found that defendant exercised at least constructive control of the furniture and without doubt, admittedly gave [C] permission to store "some items" in his basement. The items were found in his basement and "he exercised conscious control over the furniture which constituted at least constructive possession of the stolen goods—thus possession." Element (3) "Knowledge that the property was stolen." As the court stated, knowledge is subjective and if defendant had reasonable cause "to know," a final inference can reasonably be made that he knew that the property was stolen.

The evidence presented by petitioner appears to have been more than sufficient to support the findings of the hearing committee.

There were no exceptions taken to the hearing committee's conclusions of law that respondent is guilty of professional misconduct or to its recommendation that respondent be suspended by the Supreme Court for a period of five years. The board has considered the propriety of the recommendation of the imposition of the five-year suspension. Disciplinary Board actions have been reviewed where public discipline was imposed following conviction of a Pennsylvania lawyer in Federal or state court criminal proceedings. Relevant actions in that regard would include the following:

[Anonymous], 12 D.B. 73, violation of the Act of June 25, 1948, 62 Stat. 763, as amended, 18 U.S.C.A. §§1341, 1342, 371 and 1510—mail fraud, conspiracy and endeavoring to obstruct criminal investigation by misrepresentation. Disbarred on Consent.

[Anonymous], 36 D.B. 74, violation of 18 U.S.C.A. §§371, 1341 and 1342—conspiracy and using the mails to defraud. Disbarred.

[Anonymous], 2 D.B. 75, violation of 18 U.S.C.A. §1341—using the mails to defraud. Disbarred on Consent.

[Anonymous], 53 D.B. 75, 4 D. & C. 3d 694 (1977), violation of 18 U.S.C.A. §1341—using the mails to defraud. Suspension four years.

Office of Disciplinary Counsel v. Troback, 4 D.B. 76, 477 Pa. 318, 383 A. 2d 952 (1978), violation of 18 U.S.C.A. §2314—interstate transportation of stolen securities. Disbarred.

[Anonymous], 22 D.B. 76, violation of 18 U.S.C.A. §371—conspiracy to sell and transfer counterfeit obligations of the U.S. Disbarred.

[Anonymous], 6 D.B. 77, violation of 18 U.S.C.A. §1962(d)—Racketeering in Commerce and violation of 26 U.S.C.A. §7206(1)—filing false statements. Disbarred on Consent.

[Anonymous], 48 D.B. 77, violation of 18 U.S.C.A. §1503—obstruction of justice. Disbarred on Consent.

[Anonymous], 21 D.B. 78, 10 D. & C. 3d 365 (1978), violation of 18 C.P.S.A. §3922—114 counts of theft by deception. Suspension on March 5, 1979 for three years retroactive to May 30, 1978.

[Anonymous], 55 D.B. 78, violation of 18 C.P.S.A. §4105—Bad checks. Disbarred on Consent.

The imposition of a five year suspension beginning with the date of original suspension would appear to be consistent with previous determinations by your honorable court.

## III. RECOMMENDATION

The Disciplinary Board recommends to your honorable court that [Respondent] be suspended from the practice of law for five years starting with the date of his suspension by the Supreme Court on October 17, 1975.

## ORDER

EAGEN, *C.J.*, And now, June 11, 1979, the report and recommendation of the Disciplinary Board dated May 29, 1979 are accepted; and it is ordered, that [Respondent] of [A] County, be, and he is forthwith suspended from the practice of law for a period of five years, such suspension to be made retroactive to the order of suspension of this court dated October 17, 1975.