## In Re Anonymous No. 58 D.B. 81

Disciplinary Board docket no. 58 D.B. 81.

To the Honorable Chief Justice and Justices of The Supreme Court of Pennsylvania

DANIELS, *Board Member*, May 13, 1983—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

### I. HISTORY OF PROCEEDINGS

A. History of Current Disciplinary Proceeding

The within petition for discipline was filed on October 19, 1981 against Attorney [respondent], the within Respondent (respondent), with respect to two separate charges.

Charge I, hereinafter referred to as the "[A] Matter," alleged that respondent had violated the following Disciplinary Rules:

(a) D.R. 1-102(A)(3): A lawyer shall not engage in illegal conduct involving moral turpitude;

(b) D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(c) D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

(d) D.R. 1-102(A)(6): A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

(e) D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him;

(f) D.R. 7-101(A)(1): A lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available, lawful means;

(g) D.R. 7-101(A)(2): A lawyer shall not intentionally fail to carry out a contract of employment;

(i) D.R. 9-102(A): All funds of clients paid to a lawyer or law firm, other than advances for cost and expenses, shall be deposited in one or more identifiable bank accounts, maintained in the state in which the law office is situated and no funds belonging to a lawyer or law firm shall be deposited therein;

(j) D.R. 9-102(B)(2): A lawyer shall identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safe keeping as soon as practicable;

(k) D.R. 9-102(B)(3): A lawyer shall maintain complete records of all funds, securities and other properties of a client coming into possession of a lawyer and render appropriate accounts to his client regarding them; and

(l) D.R. 9-102(A)(sic)(4): A lawyer shall promptly pay or deliver to a client as requested by a client the funds, securities or other properties in possession of a lawyer which the client is entitled to receive.

Charge II, hereinafter referred to as the "[B]

Matter," alleged that respondent had violated the following Disciplinary Rules:

(a) D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(b) D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

(c) D.R. 1-102(A)(6): A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

(d) D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him;

(e) D.R. 7-101(A)(1): A lawyer shall not intentionally fail to seek the lawful objectives of his client through reasonably available, lawful means;

(f) D.R. 7-101(A)(2): A lawyer shall not intentionally fail to carry out a contract of employment; and

(g) D.R. 7-101(A)(3): A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship.

Hearing committee [ ] was assigned to hear these charges and, upon due notice to all parties, hearings were conducted on March 1 and 2, 1982, April 5, 1982 and August 20, 1982. Throughout these proceedings respondent has been most ably represented by Attorney [C], who was in attendance at all of the aforesaid hearings on behalf of respondent.

On November 18, 1982, hearing committee [ ] filed its report, in which it was found that respondent's conduct in the [A] Matter warranted a finding of violations of the following Disciplinary Rules, as articulated in Charge I:

(d) D.R. 1-102(A)(6): A lawyer shall not engage

in any other conduct that adversely reflects on his fitness to practice law;

(e) D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him;

(i) D.R. 9-102(A): All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to a lawyer or law firm shall be deposited therein; and

(k) D.R. 9-102(B)(3): A lawyer shall maintain complete records of all funds, securities and other properties of a client coming into possession of a lawyer and render appropriate accounts to his client regarding them.

In that same report, hearing committee [   ] found that respondent's conduct in the [B] Matter (Charge II) did not warrant a finding of any violation of the Disciplinary Rules, as averred in the petition for discipline, and recommended that the petition for discipline in that matter be dismissed.

Insofar as the violations that were found in Charge I are concerned, hearing committee [   ] recommended, following the taking of testimony on August 20, 1982 on the issue of the extent of discipline to be imposed, that respondent be suspended from the practice of law for a period of six months. It was the further recommendation of that hearing committee that such six-month suspension be considered separately from the prior suspension imposed upon respondent in 10 D.B. 79, but that it not run consecutively after reinstatement followng the expiration of the said suspension imposed in 10 D.B. 79, but concurrently to the extent that the actual time period of said suspension has exceeded

the six-month time period of suspension imposed in 10 D.B. 79.

On December 3, 1982, the brief of petitioner in support of its exceptions was filed by the Office of Disciplinary Counsel. On December 16, 1982, a brief on exceptions was filed by counsel for respondent. Oral argument on the exceptions of both petitioner and respondent was held before a three-member panel of this board on January 18, 1983 at the Offices of the Disciplinary Board in [ ], Pa. The three members of the board who heard oral argument were Robert C. Daniels, Esq., Chairman of the Panel, Raymond Pearlstine, Esq. and John M. Elliott, Esq.

## B. History of Past Disciplinary Proceedings Against Respondent

Respondent has been disciplined twice in the past. In 40 D.B. 75, respondent received a private reprimand on October 1, 1976 for having improperly withheld a client's file and for neglecting a legal matter, which resulted in a judgment of non pros being entered against that client.

Respondent's second discipline in 10 D.B. 79 resulted from respondent's recommendation to a client that such client change her address from her residence in Delaware County to Chester County, Pa., in order to more easily facilitate her obtaining a divorce. Respondent then obtained a new address for his client in Chester County at an apartment complex owned by another client of respondent's and regularly used by respondent for his own business purposes. This board found that respondent's conduct in that regard constituted a violation of D.R. 1-102(A)(5): "A lawyer shall not engage in conduct that is prejudicial to the administration of

justice;" and, it was recommended to the Supreme Court of Pennsylvania that respondent receive a private reprimand.

The Supreme Court of Pennsylvania, however, on October 8, 1980, rejected that recommendation of the board and, instead, ordered that respondent be suspended from the practice of law for a period of six months. On December 19, 1980, the Supreme Court stayed that order of six-months suspension. On October 15, 1981, the Supreme Court vacated its previous stay order, and respondent has not engaged in the practice of law since that date.

Respondent filed a Petition for Reinstatement with the Secretary of the Disciplinary Board on March 25, 1982, in anticipation of the expiration of his six-month period of suspension from the practice of law. The Secretary of the Disciplinary Board acknowledged the receipt of such petition for reinstatement as of March 31, 1982, but the matter was held in abeyance due to the pendency of this instant proceeding. Subsequent to the oral argument before the three-member panel of this board, respondent's petition for reinstatement was referred to hearing committee [ ] on January 21, 1983, at the direction of the Disciplinary Board of the Supreme Court of Pennsylvania, and hearings have already been held in connection therewith.

## II. FINDINGS OF FACT AND DISCUSSION

For the reasons hereinafter set forth, this board, after having heard oral argument and having conducted a complete review of the testimonial record and all exhibits in this matter, recommends that the findings of violations by hearing committee be accepted in part and rejected in part. More specifically, this board agrees with hearing committee [ ]

that respondent's conduct violated the following Disciplinary Rules with regard to Charge I:

D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him (section (e) of Charge I); and

D.R. 9-102(A): All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to a lawyer or law firm shall be deposited therein (section (i) of Charge I).

However, this board does not agree with and, therefore, rejects the findings of hearing committee [　] as to Charge I that respondent's conduct violated D.R. 1-102(A)(6), regarding respondent's engaging in conduct that adversely reflects upon his fitness to practice law, and D.R. 9-102(B)(3), regarding respondent's failure to maintain complete records of all funds, securities and other properties of a client coming into his possession, etc.

As to Charge II, this board agrees with the recommendation and finding of hearing committee [　] that respondent's conduct was not in violation of any of the Disciplinary Rules, as averred in paragraph 29 of the petition for discipline.

A. Charge I—[A] Matter

A thorough review of the entire record in this matter has disclosed that there is substantial credible evidence in this record, including both the notes of testimony and the myriad of exhibits that have been presented by both Disciplinary Counsel, as petitioner, and respondent, to support the findings of fact of hearing committee [　] that respondent was in violation of both D.R. 6-101(A)(3), by neglecting a legal matter entrusted to him, and D.R.

9-102(A), by not depositing the funds of his client in one or more identifiable bank accounts maintained in the state in which his law office was situated. In that connection, this board makes the following

## (1) FINDINGS OF FACT

1. Decedent, [A], died on October 1, 1971.

2. Decedent's son, [D], and daughter, [E], were named co-executors in their father's will, and Letters Testamentary were issued to them in April, 1973.

3. Respondent was retained for legal representation in the administration of the estate.

4. Decedent's Will provided that another daughter, [F], had the right to buy decedent's home for $8,000; however, the will requested that the sale not take place until another son, [G], had paid off a mortgage on the house, which mortgage was collateral for a debt incurred by [G].

5. Inheritance tax returns were filed and the inheritance tax was paid in April and May, 1974.

6. Thereafter, respondent had no further involvement with the estate until February 27, 1979.

7. Respondent had been a Judge of the Court of Common Pleas of [ ] County during the period from February, 1977 through February, 1979.

8. On February 27, 1979, [F] advised respondent that the aforesaid mortgage had been paid in full and that she was ready to go forward with the purchase of the house for $8,000.

9. On or about April 6, 1979, [F] delivered a check, payable to [H], in the amount of $8,000, endorsed over to respondent, to respondent's law offices in [ ], Pa. (Petitioner's Exhibit #3).

10. This $8,000 check was deposited into respondent's attorney account, maintained at the [J]

Bank in the name of his former law firm" [    ]," on April 10, 1979. (Petitioner's Exhibits #6 and #7).

11.  In anticipation of the final settlement on the real estate conveyance, respondent wrote a check in the amount of $8,000, on May 17, 1979, drawn on the attorney account of "[    ]," to himself, cashed the same and withdrew the entire amount of $8,000 in cash from the [J] Bank. (Petitioner's Exhibit #8).

12.  The settlement on the real estate conveyance, however, was cancelled, the reason therefor being disputed and still unexplained.

13.  Since respondent expected the settlement to be held imminently, he placed the money, as received from [J] Bank, in an envelope and secured it in his own personal safe, which was located at the site of his former law office in [    ].

14.  Respondent made little attempt to contact the [A] Executors or [F] thereafter, in order to reschedule the settlement.

15.  The record discloses no letters or writings evidencing an attempt by respondent to reschedule said real estate settlement.

16.  Despite efforts by [F] to contact respondent by phone, both at his office and at his home, respondent was never available to speak to her and never returned any of her telephone calls.

17.  The only subsequent contact that [F] had with respondent was in early 1981, outside of church on a Sunday morning, when she spoke to respondent and implored him to arrange a meeting to transfer the property to her.

18.  Thereafter, sometime in February, 1981, respondent did in fact prepare a deed of conveyance of the real estate involved.

19.  Both executors confirmed [F's] testimony regarding respondent's failure to complete the settlement and finalize the administration of the es-

tate during the period from May, 1978 through sometime in early 1981.

20. Neither executor was contacted by respondent during the aforesaid period of time.

21. During the aforesaid period of time, [D] did not attempt to reach respondent at all, and [E] attempted to reach him by phone on one occasion to determine the status of the matter.

22. [G], one of the residuary beneficiaries under the will, made many attempts to contact respondent to determine the status of his late father's estate.

23. In October, 1979, respondent called [G] and told him that he expected to "wrap it up in ten days."

24. Despite respondent's receipt of the $8,000 purchase price from [F] on April 6, 1979, respondent took no action, from May, 1979 to February, 1981, either to finalize the settlement on the real property transaction or to finalize the administration of the estate.

25. The $8,000 in cash remained in respondent's safe upon his law office premises until sometime in February, 1980, at which time the premises was sold.

26. Following that sale, respondent removed all of the contents from the sale, including the envelope containing the $8,000 in cash, and took them home; the $8,000 in cash was put by respondent into a fire-proof portion of the cellar, where he and his wife kept their own valuables.

27. The $8,000 remained in the cellar of respondent's home until the time of the initial hearings in this matter, at which time respondent produced an envelope containing $8,000 in cash, consisting of eight (8) separate packets of $100 bills.

28. [I], manager of the [ ] branch of the [J] Bank

([J]), examined the packets of $100 bills that were produced from the envelope by respondent at the March 2, 1982 hearing and the straps that bound the $100 bills into $1,000 packets.

29. These straps were stamped "verified," meaning that they were received at the [    ] branch of [J] on April 26, 1979 (four packs), May 7, 1979 (three packs) and May 10, 1979 (one pack).

30. [I] also identified the straps that respondent brought to the hearing as having come from [J] on or about May 16 and 17, 1979.

31. [J's] signature appears on the [J's] records, authorizing the cashing of the $8,000 check by respondent on or about May 17, 1979.

32. [J] further testified that it is probable that these $100 bills were on hand as of May 17, 1979, the date the $8,000 check was cashed, and unlikely that the bills would have been on hand for as much as two months after the date of verification or receipt by the bank.

33. [I's] testimony was credible and believable and totally supported respondent's testimony that the $8,000 in cash, separated into eight separate packets of $100 bills (10 bills in each packet), represented the very same funds that respondent received at the [J] Bank on May 17, 1979, when he cashed the $8,000 check drawn on the attorney account of "[    ]."

## (2) DISCUSSION

Hearing committee [    ] determined that respondent's conduct was in violation of D.R. 1-102(A)(6), D.R. 6-101(A)(3), D.R. 9-102(A) and D.R. 9-102(B)(3). This board does not fully concur in those findings. After reviewing the testimony and exhibits relating to this matter, we find that re-

spondent's conduct was only in violation of D.R. 6-101(A)(3) and D.R. 9-102(A), and not in violation of D.R. 1-102(A)(6) or D.R. 9-102(B)(3).

D.R. 6-101(A)(3) provides that "a lawyer shall not neglect a legal matter entrusted to him." The record is replete with, and this board accepts, testimony that respondent totally neglected the legal matters involved herein for a period of almost two years. As early as February, 1979, [F] advised respondent that the mortgage had been paid in full and she was ready to go forward with the purchase of the property for $8,000. On or about April 6, 1979, [F] delivered a check in the amount of $8,000 endorsed over to respondent, to his law offices. The real estate settlement was scheduled for May 16 or 17, 1979, but for reasons that are unclear and contested, the settlement was not held. On May 17, 1979, respondent wrote an $8,000 check on the attorney account of "[  ]" and withdrew the entire sum of $8,000 from [J], because he expected settlement to be made immediately. Despite the withdrawal of this sum in May, 1979, respondent took no action whatsoever regarding the settlement on the property until February, 1981. In the interim, respondent made little attempt to contact the [A] executors or [F] to reschedule the settlement. Respondent's inaction was confirmed by the testimony of [F] and both executors, [D] and [E]. Thus, the evidence that this board accepts firmly establishes that respondent neglected this legal matter entrusted to him for almost two years; it is clear, therefore, that his conduct in that regard constituted a violation of D.R. 6-101(A)(3).

D.R. 9-102(A) provides that "all funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the

state in which the law office is situated and no funds belonging to a lawyer or law firm shall be deposited therein." The uncontradicted testimony establishes that an $8,000 check was delivered to respondent's law office on or about April 6, 1979 and deposited into an account maintained in the name of his former law firm, "[ ]." On May 17, 1979, respondent wrote a check on that attorney account and withdrew the entire sum of $8,000 from [J]. Although the real estate settlement was not held on that date, respondent expected the settlement to be held imminently, so he placed the money in an envelope and secured that envelope in his personal safe. The $8,000 in cash remained in the safe until sometime in February, 1980, at which time the building was sold. At that time, respondent removed all of the contents of the safe, including the envelope containing the $8,000, took them home and put them into a fireproof portion of his cellar where he and his wife kept their own valuables. The money remained there until the date of the Disciplinary board hearing in this matter on March 2, 1982.

The aforementioned conduct of respondent with regard to the handling of the $8,000 in cash between May 17, 1979 and March 2, 1982 reveals a clear violation of both the spirit and letter of D.R. 9-102(A).

This board concludes that D.R. 9-102(A) requires not only the initial deposit of funds being held in a fiduciary capacity into one or more identifiable bank accounts within the state, but the continued maintenance of such funds in such an account until withdrawal is necessitated in order to satisfy the legal undertakings of a client. It is clear that respondent did not maintain the funds in an identifiable bank account as provided for in the rule.

Certainly, the withdrawal of the funds in order to effectuate settlement was not in and of itself a violation of the DR, in light of respondent's expectation that the real estate settlement would take place the next day. When the settlement was cancelled, however, respondent should have redeposited the $8,000 in cash back into an identifiable bank account where such funds should have remained until they were required to satisfy the [F] legal undertaking at settlement.

Accordingly, this board concludes that respondent's failure to redeposit the $8,000 in cash into an identifiable attorney or escrow account, extending over a period of more than two and one-half years, constitutes proof of a violation of D.R. 9-102(A).

Respondent's contention that there could not be a violation of D.R. 9-102(A) in this case since the $8,000 was not, technically speaking, "funds of a client," within the meaning of that Disciplinary Rule, is rejected as of no moment by this board, in light of the clear mandate expressed by the Supreme Court of Pennsylvania in Office of Disciplinary Counsel v. Ewing, 436 A. 2d 139 (Supreme Ct. of Pa., 1981). There, in response to a similar contention by that respondent that there was no basis for discipline because he was not acting in an attorney-client relationship at the time of his alleged misconduct, the Supreme Court stated:

"An attorney is subject to discipline for violation of the Disciplinary Rules, 'whether or not the act or omission occurred in the course of an attorney-client relationship.' Pa.R.D.E. 203(a). '[W]e cannot distinguish between dishonesty involving client matters and dishonesty in private matters: the seriousness of respondent's misconduct is not lessened by the fact that the victims of his fraud were not his

clients.' Office of Disciplinary Counsel v. Gribsby, 493 Pa. 194, 200, 424 A. 2d 730, 733 (1981); see Montgomery County Bar Association v. Hecht. 456 Pa. 13, 317 A. 2d 597 (1974)." (436 A. 2d 144).

Accordingly, hearing committee [ ] properly concluded that respondent had violated D.R. 9-102(A), and this board accepts and adopts that finding.

This board does not believe, however, that respondent engaged in any illegal, dishonest, fraudulent or deceitful conduct or engaged in any conduct that was prejudicial to the administration of justice or adversely reflected on his fitness to practice law. Although, as has been previously discussed, respondent acted in a negligent and irresponsible fashion in the overall handling of both the estate and the real estate transaction, there is absolutely no evidence establishing that he engaged in any illegality, dishonesty or deceipt or engaged in conduct that was prejudicial to the administration of justice or adversely reflected upon his fitness to practice law. Accordingly, we reject the finding of hearing committee [ ] that respondent violated D.R. 1-102(A)(6).

In that regard, this board rejects the contention of petitioner, Office of Disciplinary Counsel, that there was a presumptive misappropriation of the $8,000 in cash by virtue of respondent's having cashed the $8,000 check made payable to him on May 17, 1979 and having retained the $8,000 in cash in the manner referred to hereinbefore over the next 34 months.

This board similarly rejects hearing committee [ ] finding that respondent's conduct was in violation of D.R. 9-102(B)(3), which provides that "a lawyer shall maintain complete records of all funds, securities and other properties of a client

coming into possession of a lawyer and render appropriate accounts to his client regarding them." The evidence establishes that respondent's conduct was not in violation of this Disciplinary Rule since there is a complete record of the deposit and withdrawal of the funds that were furnished to respondent by [F]. Respondent's explanation as to the manner in which he maintained the funds between May 17, 1979 and March 2, 1982 is accepted as credible by this board, and his explanation in that regard is supported by both the testimony of [I], manager of the [ ] Branch of [J], and the physical evidence produced by respondent at the hearing in this matter. Moreover, at no time during the 34 month period, extending from May, 1979 through March, 1982, was respondent ever asked to render an accounting as to the funds in the amount of $8,000, nor was he ever called upon to return, produce or physically account for the same. " '[A] preponderance of evidence is necessary to establish an attorney's unprofessional conduct and the proof of such conduct must be *clear and satisfactory.*' " Office of Disciplinary Counsel v. Ewing, supra at 143, quoting Krehel Appeal, 419 Pa. 86, 89, 213 A. 2d 375, 377 (1965) (Emphasis added.) Since the preponderance of the evidence as to the alleged violation of D.R.-102(B)(3) by respondent is not clear and convincing, we conclude that the record in this matter does not support a finding of a violation of this Disciplinary Rule by respondent.

In paragraph 11 of the petition for discipline, respondent is charged with converting to his own uses and purposes, without the knowledge or consent of either co-executor, the $8,000 in cash involved herein. There is no evidence whatsoever to sustain a finding that respondent converted the $8,000 to his own use.

Although respondent did withdraw the $8,000 in cash, such withdrawal, under the facts of this matter, was not tantamount to a conversion. The overwhelming weight of the evidence, *albeit* circumstantial, supports respondent's testimony that, upon withdrawal, the $8,000 was placed into an envelope, which remained in his office safe and, thereafter, was transferred to a secure fireproof area in the basement of his house. [I] identified the straps binding the packets of bills as being part of the cash withdrawal respondent made on May 17, 1979. Admittedly, [I] could not identify the bills themselves because their serial numbers were not recorded by [J] at the time of the withdrawal, in accordance with the then prevailing banking custom. But in order to have converted this money, respondent would have had to have save these straps, then located 80 pre-1979 one hundred dollar bills and then repacked the cash. This is clearly the more incredible and more unlikely version of the events that occurred. Thus, this board finds that the weight of the credible evidence establishes that respondent did not convert the $8,000 cash in question to his own use.

## (3) IMPOSITION OF DISCIPLINE

Hearing committee [ ] recommended that respondent be suspended from the practice of law for a period of six months. It is also recommended that "the suspension be considered separately from the suspension imposed in 10 D.B. 79, and that it not run consecutively after reinstatement of the said suspension imposed in 10 D.B. 79, but concurrently to the extent that the suspension imposed in 10 D.B. 79 has exceeded the time period therein imposed."

This board concurs in this recommendation. In

10 D.B. 79, respondent was suspended for a period of six months on October 8, 1980. On December 19, 1980, the Supreme Court of Pennsylvania granted a stay of that suspension. On October 15, 1981, the stay order of December 19, 1980, was vacated. Accordingly, respondent's prior six-month suspension, in 10 D.B. 79, began running on that date. Thus, that suspension expired on April 15, 1982, subject to respondent's being reinstated to the practice of law by the Supreme Court of Pennsylvania. To date, respondent's petition for reinstatement to practice law in the Commonwealth of Pennsylvania has not yet been ruled upon. Thus, he has not practiced law since October 15, 1981, a period of more than one and one-half years.

It is, therefore, the recommendation of this board that the six-month suspension recommended herein commence to run as of April 15, 1982, the expiration date of the prior suspension, and for a period of six months thereafter.

B. Charge II—[B] Matter

The record discloses, and this board so finds, that there is no credible evidence supporting the allegations, as contained in the petition for discipline, as to Charge II; accordingly, this board recommends that the petition for discipline be dismissed as to this charge.

In that regard, this board makes the following

## (1) FINDINGS OF FACT

1. [B] died on April 8, 1979, apparently without living relatives.

2. Respondent had represented said decedent in the past and had served as the attorney in administering the estates of both her brother and sister.

3. Respondent had prepared a will for said decedent in 1974, in which her sister was named as Executor.

4. Subsequently, respondent wrote to said decedent in 1976, suggesting the need to revise her will.

5. She did not reply and respondent had no subsequent contact with her thereafter.

6. [K], Esq., with law offices in [ ], Pa., was appointed attorney-in-fact for [B] in August, 1977, and administered her affairs from that date until the time of her death.

7. [K] called respondent on the evening of April 8, 1979, informing him of the death of decedent, and stated that respondent was the Executor under her will, had prepared her will and suggested that he make all funeral arrangements.

8. Respondent called [L], a funeral director in [ ], and requested that [L] handle the funeral and burial of decedent.

9. Respondent did not at any time advise [L] that respondent was handling decedent's estate or had authorization to act for the estate.

10. Subsequently, respondent and [K], whose offices were one hundred yards or so away from each other, discussed the location of the will.

11. Respondent told [K] that he only had a copy of the 1974 will that he had prepared (and which named him as alternate Executor) and that he did not know of the whereabouts of the original.

12. Respondent continued to make a search for the original will and made further inquiries of [K] (who had access to [B's] safe deposit box) and of the hospital and nursing home where decedent had been a patient.

13. He also made inquiry of the auctioneer who sold the contents of decedent's home.

14. The original will was never found.

15. Respondent did not have any authority to inventory decedent's safe deposit box from June, 1979 through September 30, 1980.

16. Accordingly, respondent did not neglect any representation for which he had been retained.

17. [L] made numerous calls to respondent in an attempt to obtain payment of his funeral bill.

18. [L] also had [M], Esq., who is a relative of [L] by marriage, call respondent to inquire about the status of the administration of the estate.

19. Respondent explained the problems concerning the missing will and suggested that since both [K] and [L] were creditors of the estate, they had standing to apply for letters of administration and should do so.

20. [K] was aware of the problems concerning the missing will and knew that both he and [L], as creditors of the estate, had standing to apply for letters of administration.

21. Subsequently, [L] filed a complaint with the Disciplinary Board and also applied to take out letters of administration on decedent [B's] Estate.

(2) Discussion

It is clear from the evidence that [K], Esq., and not respondent, had been representing decedent during the three years immediately prior to her death. [K] was in fact designated as her attorney-in-fact. There was no evidence presented that established either that respondent was handling decedent's estate or even had authorization to act on its behalf. Nor did respondent's conduct or representations ever give the appearance that he had authority to act on behalf of the estate. Although respondent's conduct may have been at times discourteous in this matter, it certainly did not rise to

the dignity of a violation of the Code of Professional Responsibility, as alleged in the petition for discipline.

(3) Imposition of Discipline

This board, accordingly, accepts the recommendation of hearing committee [ ] as to Charge II that the petition for discipline in that regard be dismissed and recommends such a dismissal to the Supreme Court of Pennsylvania.

## III. RECOMMENDATION

For all of the reasons set forth hereinbefore, the Disciplinary Board accepts the recommendation of hearing committee [ ] that respondent be suspended from the practice of law in the Commonwealth of Pennsylvania for a period of six months, commencing as of April 15, 1982, the date on which his prior six month suspension, in 10 D.B. 79, expired, and extending for a period of six months thereafter. The board further recommends that respondent pay the costs incurred herein.

Mrs. Hammerman, Mrs. Neuman, Mr. Krawitz and Mr. Elliott did not participate in the adjudication.

ROBERTS, C.J., June 24, 1983, the recommendation of the Disciplinary Board dated May 13, 1983, is accepted; and it is ordered that [Respondent] be and he is suspended from the Bar of the Commonwealth for a period of six months commencing April 15, 1982; and it is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.